# CRIMINAL RECORDER.

## MAYOR'S COURT, AUGUST, 1815.

In the matter of Thomas F. Goodhue, } *Bail.*
   brought up on habeas corpus. }

*Riker, Recorder.* Upon a return of the habeas corpus it appears that the prisoner is detained upon three different commitments; the first dated the 14th, the second the 17th, and the third the 21st of August, 1815.

The first commitment is under the statute for apprehending and punishing disorderly persons. 1 R. L. p. 114. It is signed by Mr. Justice Hedden, and states that Thomas F. Goodhue stands charged before him " with being a disorderly person—to wit, a person wandering abroad and lodging in taverns, not giving a good account of himself; whereof he, the said Thomas F. Goodhue, stands convicted before me by my own view, and also on his own confession." On this he commits him to Bridewell for sixty days.

The second commitment states, that Thomas F. Goodhue is charged upon the oaths of Ruggles Whitney, Thom-

*NEW-YORK,*

On a habeas corpus for the body of a person committed for a definite period, under the act relating to disorderly persons, usually termed the vagrant act, the grounds of the commitment may be enquired into on the return of the 'writ, and the party admitted to bail.

NEW YORK, mas G. Prentiss, and Martin Blake, with having, in June last, at Lexington in the State of Kentucky, fraudulently, and by false pretences and exhibiting forged letters of credit, obtained *divers sums of money of several individuals and mercantile houses, with intent to defraud, &c.*

The third commitment is signed by Mr. Justice Warner, and is in substance the same as the second, saving that it designates the *names* and *persons* who have been defrauded.

In addition to these commitments, a deposition has been laid before me, charging the prisoner as a fugitive from justice from the State of Kentucky.

It is uncertain whether the alleged forged letters of credit are of such a character that the prisoner, if guilty, has committed a felony. But suppose them to be of such a nature that the forging of them amounts to felony, and that fact be sufficiently expressed in the warrant of commitment, can the prisoner be let to *bail* ?

1 R. L. 355.    As a doubt has been raised upon this question, it is proper that the law should be clearly understood. It is supposed that if the warrant of commitment distinctly charges a prisoner with felony he cannot be bailed. The supposition arises from the words of the habeas corpus act, which are as follows :—"If any person be imprisoned as aforesaid in vacation time, it shall be lawful for every such person, other than persons convict, or in execution by legal process, or committed for treason or felony plainly and specially expressed in the

warrant of commitment, to apply to the chancellor, or NEW-YORK, judge," &c.

The 4th section imposes a penalty of $1,250 if the chancellor or judge refuses the habeas corpus.

From the words, " other than persons convict," &c. being in the act, it has been contended, that in those cases the writ could not lie, or if it would, that no judge could admit to bail ; whereas the only meaning is, that in those cases the judge is not exposed to the penalty of $1,250 if he refuses the writ.

§ 4.

To show that this is so, let it be remembered that our habeas corpus act is the same as the act of 31 Car. 2. c. 2. See the act, 3 Hawk. 191. The same exception is made in the same words, and the same penalty imposed for refusing the writ ; yet no lawyer ever supposed that this applied to the power of the judge to admit to bail persons charged with a felony. It has been the immemorial practice for the courts, and for the judges in vacation, to bail in their discretion in all cases whatsoever. It has been done constantly in Great Britain before our revolution, and in our state, and in the United States. It has been done even in treason, after indictment, as will be shown.

Power to bail

This power is rightfully lodged in the hands of the superior courts, and of its judges.

Suppose an infamous prostitute should charge one of our most respectable citizens wit a rape, is it right that he should lie in prison until he is tried, because the war-

NEW-YORK, rant of commitment plainly expressed, as it of necessity must, that he is charged with a felony? Suppose a citizen could prove by twenty witnesses of the fairest reputation, that he was at Albany when the crime is alleged to have been committed in New-York, must he be separated from his family, and shut up in a prison because the committing magistrate states in the warrant, as he must state, that he is charged with a felony most manifest ; the law would be defective 'if it were so ; but that is not the law. The judge, it is true, cannot be prosecuted in such a case for the penalty for refusing the writ, but no upright magistrate will, in that case, refuse it; and if good cause be laid before him for bailing the accused, he will, and he ought to admit to bail : no doubt it ought to be done with great care and caution.

Without reasoning more upon the subject, I shall refer the profession to the authorities 4 Black. Com. p. 299. He says, " It is agreed that the court of K. B. (or any judge thereof in time of vacation) may bail for any crime whatsoever, be it treason, murder, or any other offence, according to the circumstances of the case. And herein," says he, " the wisdom of the law is very manifest, because cases may occur where it would be hard and unjust to confine a man in prison though accused even of the greatest offence."

Lord Hale, vol. 2. p. 129., says, the court of K. B. might and still may, bail in any case whatsoever, even in high treason or murder.

Hawk. vol. 3. p. 225. says, " the court of K. B. has power to bail in all cases whatsoever ; and the judges

will, in general, exercise it in favor of a prisoner in every case *not capital ;* in capital cases, where there is any cir- cumstance to induce the court to suppose he may be inno- cent, and in every case where the charge is not alleged with sufficient certainty."

These authorities might be sufficient, but I proceed : In Cowp. p. 353. Lord Mansfield bailed a person charged with forgery.

In 4 Burr. 2179. the court bailed a person charged with a rape ; and bailed also accessories. Many other cases are collected in 3 Hawk. 225.

In our own country the question has been frequently ad- judged. In the trial of Col. Burr, the Chief Justice of the United States ruled as follows : " That the court had the power to bail a prisoner indicted for treason according to its sound discretion ; and that this discretion was to be ex- ercised according to the nature and circumstances of the evidence, and the usages of law." Report of Burr's Trial by S. Carpenter.

Aspinwall, Cornwell, and others, were in like manner ad- These cases mitted to bail by Judge Livingston, though under indict- are not re-<br>ported. ment for treason.

Mr. Ludlow was admitted to bail by judge Hobart, though charged with a rape, which was then punishable with death.

Mr. Barnwell was indicted for manslaughter, pleaded guilty, and was continued under bail.

NEW-YORK, John P. Poillion was indicted for a forgery, on Staten Island, and was admitted to bail.

Many other cases\*(might be referred to, where persons charged with felony have been admitted to bail. I have therefore no dout, that the Recorder of this city, acting under the authority of the act of the legislature, of this state, 1 R. L. 321. which gives him the power of a judge of the Supreme Court, may, in his discretion, bail in all cases whatsoever, always regulating that discretion by the rules of law.

A person committed as a vagrant may be bailed It has also been objected, that as the prisoner has been adjudged to be a vagrant, or disorderly person, he is in execution, and cannot be relieved by any legal appeal. If this doctrine be true, and it has its advocates, a magistrate of the police may adjudge any man in this city a disorderly person, and commit him six months to the penitentiary under the present act, and yet no relief can be obtained. This can be done by a single magistrate, without the intervention of a jury, and without the possibility of appeal. If this be so, it is as perfect a despotism as can well be conceived.

It is said there is no fear of the magistrates abusing the power : my answer is, that I would not confide an uncontrolable power of that kind to any man. I am of opinion that the law has provided a plain remedy against the abuse of that power. A party so convicted may, upon affidavit disclosing the merits of his complaints, obtain a certiorari ; and upon giving bail to abide the judgment of the Supreme Court, he will be entitled to be discharged.

If he be confined, the Supreme Court, or one of its NEW-YORK, judges, might, in his or their discretion, allow a *habeas corpus*, to bring his body up, and then grant the relief by taking bail to abide the decision upon the certiorari.— The law I contend for, is highly favorable to personal liberty ; the case in 1 Str. 531. is to this point. The defendant was convicted for keeping an ale house without license, and was thereupon committed for a month as the law directs. After he had lain a fortnight, he brought a certiorari, and upon the return of it he was admitted to bail, the court being of opinion that if the conviction was confirmed they would commit him in execution for the residue of the time.

A similar principle will be found in the case of the King v. Elwell, Str. 794. The 4th section of the act regulating the issuing the writ of *habeas corpus* provides for cases of this nature. 1 R. L. p. 141.

Without going into a critical examination of the commitments, I should have no doubt of the power of the Recorder to interfere and admit the prisoner to bail, if, under the circumstances of the case, he ought to be bailed.

But it does appear upon the oath of a witness, which oath is taken before a competent authority, that the prisoner has committed a public offence against the laws of the State of Kentucky, and that he is a fugitive from the justice of that State.

The Constitution of the United States provides expressly for his arrest. That Constitution is sacred, and we are

NEW-YORK, bound by it.   It is the Supreme law of the land.   It may be said, that though it be true that upon the demand of the executive power of Kentucky, the prisoner must doubtless be given up, but until he is demanded he is to be held at large.   This cannot be the meaning of the Constitution.   We may hold a fugitive to give a reasonable time to demand him.

The Supreme Court of this State has also put a construction upon this provision in the Constitution in the case of Schenck.   2. Johns. Rep. 479.

The decision of this Court, therefore, is, that Thomas F. Goodhue be remanded, and detained in custody six weeks, to give time for the executive of Kentucky to demand him under, and in pursuance of, the Constitution of the United States.

Let him be remanded for six weeks.

## *NOTE.

Statement of the case.

*Court of General Sessions, New York, Feb. 1820.*

<blockquote>
The People<br>
vs.                } *Motion to Bail.*†<br>
Robert M. Goodwin.
</blockquote>

*Colden, Mayor.* " On the 7th of January last the grand jury of this court presented an indictment of manslaughter against Robert M. Goodwin, the prisoner at the bar, accusing him of having feloniously killed James Stoughten.   The next day the prisoner was arraigned on that indictment, pleaded not guilty ; and on being asked if

† See the Report of Goodwin's Trial, (pamphlet,) by Counsellor Sampson.

he was ready for trial, he answered he was not. An application was then made to bail the prisoner. The court intimated their opinion, that it was not of course to bail on such a charge, and the matter was no farther moved at that time.

" At an early day in this term, the counsel for the prisoner moved, that his trial should be brought on in the course of the term, or that he should be discharged ; and if not discharged, that he should at least be bailed.

" On that occasion the public prosecutor stated, that an inquest had been found against the prisoner for the murder of James Stoughten, the person who, by the indictment for manslaughter, he is accused of having feloniously killed. That the inquest had been by the coroner put on files of this court, and that he intended to try him on that inquest at a court of oyer and terminer, which would be held in this city for the purpose, as soon as the duties of the judges of the supreme court, as members of the court of errors and the counsel of revision, now in session at Albany, would permit one of them to preside at an oyer and terminer here. That on this account he avowed that it was not his intention to try the prisoner in this court, nor would he consent to his being bailed or discharged. The court declined granting the application at that time, but consented, at the request of the counsel, to hear the application anew. And now on the last day of next term after his indictment, the prisoner applies to be bailed on the charge of manslaughter.

"I shall, in the first instance, consider this subject as if it were to be decided on the supposition that the prisoner stood before this court indicted for manslaughter only ; and shall therefore, for the present, put out of view every other circumstance. The question then is, whether the

NEW-YORK, court ought in this indictment for manslaughter, as a matter of course, merely on the prisoner's application to admit him to bail.

Power to bail, incident to the power to hear and determine.
Com. Dig. 658. 660.

"The power of the court to bail for this offence, under any circumstances, has been questioned for the counsel for the prosecution. But it seems to me that the power to bail must be incident to the power to hear and determine. We have certainly power to discharge altogether. It is expressly given to us by statute, under certain circumstances ; and without statute, it necessarily belongs, as it appears to me, to a court having the power to try, as in all cases to which such power extends. If we have the power to grant a new gratuitous discharge, it must

Lord Mohun's case, Salk. 104.

follow, I think that we have power to discharge *sub modo*. If we may discharge without bail, a fortiori, we may discharge without bail. The case from Salkeld, which, upon its being first read, I did consider in opposition to this position, I think has been satisfactorily met by the observations of the defendant's counsel, and has been shown to be reconcilable with what I understand to be the law.

Bail for offences above petit larceny not demandable of course.

"It seems to be admitted, that where a person is discharged with any felony above the degree of petit larceny, (as to which there is a statutory provision) he cannot demand bail as of course ; and that the court or magistrates, having the power, are to bail him or not at their discretion.

"Legal discretion never means, either in criminal or civil law, arbitrary will.

Legal discretion, what?

"Legal discretion is always to be governed or directed by known and established rules ; and, in truth, cannot be otherwise applied than to decide whether facts bring the case within the operation of such rules.

"The well established rule of law applicable in this case is, that a person fully and explicitly charged with a felony cannot be bailed, unless there be something presented in opposition to the charge, which may raise a presumption in favor of his innocence ; or at least it must appear indifferent to the court or magistrate called on to bail him, whether he is guilty or not.

"It is unneccessary to recapitulate the authorities which have been cited to this effect. It has been the law of England and of this country, since the time of the statutes of Edward the first. No case has been cited to the contrary. And I never knew of any practice of this court or any other, that violated a rule, the strict observance of which appears to me to be absolutely necessary to a due and impartial administration of the law ; of that administration which shall put the poor and the rich on an equal footing in a court of justice.

"This rule is not disputed by the counsel for the prisoner, they contend, however, that the maxim of law that every man is to be presumed innocent till he be found guilty applies to this case at this time. But it is obvious that this argument would lead us too far ; for if it would now apply, it would at all times reach every case. And if it is always to be adopted, then it would follow that in every case the accused must be let to bail. The truth is, that this just and benign principle is not applicable, except when the accused is on his trial ; for the purpose of securing his person to answer to a direct and positive charge, made in due form, and to bring him to that trial, we are bound to treat him as if he were guilty, at least, we must do so until some matter be presented in his favor, which, in the exercise of our discretion, we shall judge a presumption of his innocence.

NEW-YORK,

A general rule of law, that a person fully and explicitly charged with a felony cannot be bailed. See The State v. Rockafellow, 1 Halsted's R. 332. On a motion to bail, Kinsey, C. J. said, "We entertain serious doubts of the truth of the accusation ; but a dubious case attended with an actual escape and flight from the officer of justice, decides us against the application. The prisoner has been retaken, and must remain in custody until discharged by due course of law. The maxim that "every man is presumed innocent till he is found guilty" does not apply to the question whether he is to be bailed or not, he is to be treated as guilty until some matter be presented in his favor.

NEW-YORK, "In this case nothing of that nature is offered. The prisoner is not only committed on a charge of felony fully and explicitly expressed in the warrant of commitment, but he stands charged with a felony of manslaughter, by the indictment on the files of this court.

"It appears to me in vain to say that the public prosecutor is to produce further evidence of the guilt of the accused than the commitment or indictment, since the law says that he must raise a presumption in favor of his own innocence. It can only mean that he must destroy the presumptions which must necessarily arise against him from these accusatory documents.

See the case "In some instances, indeed, the magistrate or court may of Joshua De Graff, ante look into the testimony on which the accusation is founded ; and if it affords the presumption in favor of the prisoner's innocence, he may be bailed. rities there cited by the counsel.

"The second ground, however, of this application is, that the trial of the prisoner on the indictment for manslaughter, has been so long delayed, that he is entitled to be bailed, if not discharged.

"I have no doubt if there be any unreasonable delay in the prosecution of an indictment, which this court may try, it ought to interpose its authority, and relieve the accused from the oppression of an unnecessary and unwarranted imprisonment.

"We are then to inquire whether there has been such delay in this case.    As I have already stated, the prisoner was indicted and arraigned the last term ; that he then said he was not ready for trial; and at this second term

his counsel have moved for his trial, which the public pro- NEW-YORK,
secutor has avowed he did not mean to bring on.

" A statute of this State provides, that if any person indict- 1 R. L. p.
ed shall not be brought to trial at the second term of the 356.
sessions, after the commencement, he shall be discharged
as far as relates to any treason or felony for which he was
committed, unless a satisfactory cause be shown by the
public prosecutor for not bringing him to trial.

" The application to the court is not to discharge the pris-
oner, but to bail him ; if the court thought him entitled
to his discharge, they could not refuse to admit him to
bail.

" Under the provision of this statute, the prisoner would
be entitled to his discharge, unless the public prosecutor
has shown satisfactory cause for not bringing him to trial.

" The only cause he has shown is, that by a coroner's in- Cause shown.
quest the prisoner is charged with murder ; and the pub-
lic prosecutor avows his intention to arraign the prisoner
on that inquest in the oyer and terminer, where by the
law it is returnable ; and which court has sole jurisdic-
tion of the crime which it charges.

" We have then to decide whether this court ought to con-
sider the existence of the inquest as a satisfactory cause
for not now putting the prisoner on his trial.

" This inquisition, I have no doubt, is improperly on the
files of this court. It ought to be in the hands of the
coroner, until returned, pursuant to the statute, to the
court of oyer and terminer. Yet I think this court is
bound to take notice of it. We may consider it as pre-
sented to us by the public prosecutor, in the hands of the
coroner ; or it appears to me we are bound to represent-

NEW-YORK , ations of the public prosecutor of the existence of the inquisition, and of his intention to proceed upon it. Circumstances may exist when we should be obliged to accept this evidence of a no less solemn and important fact, as to which I do not know how otherwise we could obtain information. Suppose that the prisoner, instead of being now charged by a coroner's inquest with murder, had, at the last oyer and terminer, been indicted for that crime ; and that the last grand jury of this court had notwithstanding presented the indictment for manslaughter now on our files. How could we have obtained knowledge of the proceeding in the oyer and terminer, but by the information of the public prosecutor ? At any rate, I think this inquisition is so before us as that we are bound to take it into consideration.

Coroner's inquest for murder, and indictment in the sessions for manslaughter.

" Supposing for a moment that this inquisition is equivalent to an indictment, and that the prisoner may be arraigned and convicted upon in the oyer and terminer ; then can this court, consistent with its duty, take any step, or pursue any course, which might interfere with that jurisdiction which the laws of our country have committed to a higher tribunal? We have no cognizance of the crime of murder. Shall we then adopt measures which will arrogate to ourselves the disposition of an accusation on which it belongs for our superiors to decide ? If we were to try the prisoner on the indictment for manslaughter, unquestionably we should put an end to the prosecution for murder ; and is there not a great inconsistency in saying that this inferior tribunal can or ought to pursue such a course as to take to itself the decision of a matter which does not belong it, but which, by the constitution and laws of our country, is delegated to a superior court? If the inquisition be equivalent to an indictment, then in virtue of the inquisition, the case of the prisoner

is as much attached to the oyer and terminer as if there NEW YORK, was an indictment of that court to the same effect. Suppose, then, that after an indictment in the oyer and terminer, a grand jury in this court were to find a bill on the same facts for murder ; it seems to me that every one will admit that it would be absurd to say, that because the session grand jury had chosen to find a bill for manslaughter, that we could and ought to proceed on that bill, and thereby oust the oyer and terminer of the trial and decision of the cause. If this doctrine were to prevail it would utterly confound all jurisdictions. I cannot see why the indictment for manslaughter should be allowed to interfere with the inquest for murder, more than if a grand jury, after having found an indictment for larceny in this court, should afterwards find an indictment for trespass on the same facts, the latter should be allowed to interfere with the former.

" It is admitted, in England that the inquest is equivalent Coroner's in to an indictment; but it is said, that we ought not to con- quest. sider it so, because, by the constitution of the United States no man can be held to answer upon it. This is a question I do not mean to take upon me to decide. The law of our state, which has been revised several times since the adoption of the constitution, not only points it out as a mode of prosecution, but provides that the justices of oyer and terminer shall proceed thereon : and it is admitted that in several instances, at least in more than one instance, in this state, persons have been put to answer on the coroner's inquests. Would it not then be a most unwarrantable presumption in this court to act on their own opinion, when that opinion was in opposition to repeated legislative acts, and to the decision of tribunals to which we are unquestionably subordinate ? We have been asked if the document now presented to us, and which

NEW-YORK, purports to be an inquest of the coroner, were manifestly defective ; as, for instance, if it should appear to have been the finding of eleven jurors—if it should want seals, or the name of the coroner, yet would we then suffer it to control us in the administration of justice ? I answer, certainly not : for then it would be no inquest. It would be only requiring us to open our eyes to see that it was not ; and in determining to disregard it, we should not be exercising the highest judicial function, and in opposition to the legislature and superior courts, deciding a great constitutional question, which, in my mind, belongs to another tribunal.

"I am therefore of opinion, that when the public prosecutor showed us the coroner's inquest, accusing the prisoner of the murder of the same person who he is charged by the indictment on our files with feloniously killing, he has shown sufficient cause for not bringing the prisoner to trial, and that we ought not, whatever our power may be as to the manslaughter, at this time, either to bail or discharge him.

" I beg it to be observed that my opinion is, that we ought now, at this time, to receive the inquest as a satisfactory cause, shown by the public prosecutor, for the delay which has taken place. I by no means intended to say that it should always be so considered. I think this court nor no other court, should leave the prisoner at the mercy of the public prosecutor. We never will suffer the duration of his imprisonment to depend on the pleasure of the attorney of the people. Our laws have taken good care to guard against oppression by their administrators, and it is our duty to see that their provisions in favor of humanity and the liberty of the citizens are duly enforced.

If, therefore, it should appear to us that there is any <span>NEW YORK,</span> wanton or even unnecessary delay on the part of the public officer ; if after there has been an oyer and terminer in this county, no measures should be taken on the inquisition, or if the prisoner could justly complain of the delay in the appointment of such a court, then I think an application like the present would call upon us to decide as to the extent of our powers, and whether we would not exert them for the relief of the prisoner. The opinion now delivered goes no farther than to decide, that if we may, at our discretion, bail the prisoner on an indictment for manslaughter, we do not think it would be a proper exercise of that discretion to bail him under existing circumstances. The application is therefore refused.

*Supreme Court, August*, 1820.