ALBANY,
Oct. 1825.

Ex parte
Tayloe.

*J. Lansing,* (*S. M. Hopkins,* same side,) therefore, now moved to amend by reducing the amount of the endorsement to the amount bid for those lots to which the defendant had title, and striking from the certificate the lots to which he had no title.

*S. Stevens,* contra,

---

## *Ex parte* TAYLOE.

CHARLES TAYLOE was committed to the common jail of the county of Columbia, during the present term, for bail as the English K. B. ; and may let persons charged with criminal offences to bail in all cases whatsoever.

The supreme court have the same powers in relation to

Upon the return of a *habeas corpus ad subjiciendum,* with the body of a prisoner against whom a coroner's inquest have found an inquisition of murder or manslaughter, the court are not concluded by the finding ; but will look into the depositions to see whether a crime has been committed, its nature, and the strength of proof by which the accusation was supported.

Though the crime appear to be but manslaughter ; it is not of course to allow bail.

But if the guilt or innocence of the prisoner appear to be indifferent, he may be bailed.

Though the warrant of commitment be defective, the court will not discharge the prisoner finally for that reason ; but if a crime be made out upon the deposition, the course is to discharge *pro forma;* but remand upon a special rule. Form thereof.

If there be no reasonable doubt of the guilt of a prisoner charged with committing a felony, he ought not to be bailed, even by the supreme court.

having slain one Crandall; but the warrant of commit
ment did not recite enough to show a proper cause of com-
mitment; and the Court, at an early day in the present
term, granted a *habeas corpus ad subjiciendum*, returna-
ble before them, with a view to inquire whether the pri-
soner should be bailed.    Upon the return of this writ it ap-
peared that a coroner's inquest, having inquired into the
case, had returned an inquisition of manslaughter; and
the depositions upon which Tayloe was committed, and
on which the inquisition was founded, presented substan-
tially this case : that on the 19th of October, 1825, Crandall,
the deceased was standing near the Academy in Kinder-
hook, (Columbia county ;) and was ordered by one of the
students, (a little boy,) to leave the place where he stood,
the little boy supposing that he (Crandall) wished to look
into the dressing room of the scholars, it being the day of
the public school exhibition.    Crandall refused to go away
at first ; and the little boy threatened to bring other boys,
who should compel him to depart.    But this was not done ;
and he soon went away.    Shortly after, he was met in
the street by the little boy and a large boy, at some dis-
tance from the Academy.    An angry conversation was held
between them, followed by a scuffle.    Other students were
sent for, and arrived ; and among these was the prisoner.
All the school boys present then attacked the deceased ;
and the prisoner threw a stick at him.    The deceased de-
fended himself as well as he could.    He alternately re-
treated and pursued some of the boys, who came out against
him.    At length he obtained a piece of board, with which
he defended himself, and assailed his adversaries.    Among
others, he struck the prisoner with this piece of board ;
whereupon the prisoner stabbed him with a jack knife in
the abdomen,.giving him a wound, of which he died.    Af-
ter stabbing Crandall, and while standing a short distance
from him, the prisoner admitted that he had done so ; and
said he would do it again on like provocation.

*B. F. Butler*, moved that the prisoner be let to bail.    He
said that, at the utmost, the evidence made out a mere case
of manslaughter.    In applying the English practice, upon

the subject of bail, to this Court, it would be necessary to distinguish when the books speak of the King's Bench, whose high powers this Court possesses, and classes of inferior magistrates, who are numerous, and possess the power of letting to bail in certain specified cases only.   No doubt many cases, or rather *dicta*, which may be cited against this application, refer to the inferior magistrate ; not to the Court of King's Bench or a Judge of that Court, who undoubtedly possess the power, in their discretion, to bail in all cases whatsoever.  (1 Chit. C. L. 98.  Com. Dig. Bail, (F. 4.)  2 Hal. P. C. 129.  2 Hawk. Ch. 15, s. 40 and 80.)  The page of Chitty, just cited, gives the general rule in relation to manslaughter ; and in *The People* v. *Goodwin,* (1 Wheeler's Criminal Cases, 443,) before Spencer, late Ch. Justice, after laying down the same rule, he says (id. 448) it "is adapted to all who can comply with its terms ; and it is the misfortune of those who cannot give the necessary security." Several cases are there cited by the Chief Justice, in which bail has been allowed upon a charge of homicide.   There are three cases in Coke's Entries, 354 to 356, which were copied from the rolls of the Court, by which it will be seen that the power was exercised, in the reign of Elizabeth, to bail in cases of murder.   And it appears by two of these entries, that the offenders, after being bailed, were convicted of manslaughter.   The book, at the pages cited, purports to be copied from rolls of the K. B. then in actual existence ; the number of the roll is given, as well as the dates and places of the several offences, and the initials of the offenders ; and it shows the power of the Court to be very ancient, as well as that it will be exercised on actual indictment even for murder ; not confined to cases of doubt ; but where the prisoners were finally convicted.  The entries are, *de gratia Curiæ speciali,* the offender is delivered on bail, &c. after the award of a capias, and an arrest.   The only exception in case of manslaughter seems to be, where a party is guilty by his own confession, or notoriously guilty, as the books say, which in manslaughter, can only be upon his own confession.   (2 Hawk. ch. 15, s. 80.)

The counsel also cited *Lisle's Case,* (Kelyng's Rep. Cr. Cas. 89;) 1 Bulstr. 85; *The King* v. *Poynes,* (3 Bulstr. 113:) *Herbert & Vaughan's Case,* (Latch. 12;) also Selfridge's Trial, (p. 8, 2 ed.) who, he said, was bailed after an indictment for manslaughter; a stronger case than this where no indictment is found.

It would not be denied, he said, that the Court might look into the depositions, to see whether a manslaughter had been committed, notwithstanding the inquisition. He denied that the depositions made out manslaughter. But, at any rate, it could not but be seen, that if there was manslaughter in the case, it was of the very lowest grade. He was aware that there was no such thing as legal degrees of manslaughter; but like every other offence, it was attended with different degrees of moral turpitude; and was more various in this respect than any other crime. It presented innumerable shades, from murder, the highest offence against the life of a fellow being, down to excusable homicide. It was upon this principle, that the legislature had allowed a great latitude of discretion to the Court, who are to fix the punishment; and this Court are warrantable in looking to these considerations, when called on to allow bail.

*J. Wilcox,* (District Attorney,) contra, relied upon *The King* v. *Marks and others,* (3 East, 157,) as a case in point, against bailing the prisoner. He said the K. B. held, in that case, that they might remand, though the warrant of commitment was defective, the depositions making out a felony. In that case, the prisoners were committed on a charge of felony upon the statute against administering, being present at, or assisting in the administration of unlawful oaths. The Court looked into the depositions; and although they admitted the law to be doubtful, yet they inclined against the prisoners; and thinking that they might be guilty within the statute, they were therefore, remanded by special rule, because the warrant was defective. The Court looked to see whether a felony had probably been committed, without reference to the degree of moral guilt; and inclining that the offence made out was within the statute, they deemed

it their duty to remand; leaving the question of law to be afterwards discussed upon a more full state of the facts.

Now here is a plain felony of some kind; at least a manslaughter; and we do not hesitate to say, a technical murder. There can be no doubt, that this assemblage of boys, followed by the affray, was a riot; and brings the case within the rule laid down in 1 Hawk. ch. 29, s. 10; that "if a man happen to kill another in the wilful commission of any unlawful act, which necessarily tends to raise tumults and quarrels, and consequently cannot but be attended with the danger of personal hurt to some one or other, as *by committing* a riot, robbing a park, &c. he shall be adjudged guilty of murder." Being thus engaged in an unlawful act, though Crandall had given the first blow, yet the stabbing was murder. (*The King* v. *Oneby*, 2 Ld. Raym. 1485. Toml. Dig. 78, S. C.) The offence shall not be reduced to manslaughter, unless the blow or offence be such as to deprive the party of his reasoning faculties at the time. (Toml. Dig. 79. tit. *Homicide*, II.) Indeed there have been various convictions of murder, upon a slaying after very great provocation. (1 Hal. P. C. 455. 4 Bl. Com. 199. Kelyng, 5. *Regina* v. *Mawgridge*, id. 119.) And in *Brown's case*, (Leach's Cr. Cas. 151,) the offence was turned into manslaughter, only upon the ground that the prisoner had reason to fear his own destruction, had he not taken the life of his adversary.

If, on looking into the depositions, the Court should conclude here has been a murder, clearly they will not allow bail. And so we contend if the prisoner be guilty of manslaughter. That here was a manslaughter committed, seems to be very slightly contested by the prisoner's counsel. The Court are to exercise a sound legal discretion; and they will not bail even for manslaughter, unless there be very great doubt of guilt. (*The King* v. *Marks and others*, 3 East, 157. *The People* v. *Goodwin*, 1 Wheeler's Criminal Cases, 443.)

*Talcott*, (Attorney General,) same side. We admit the power of this Court, in its *discretion*, to bail in all cases whatsoever; but this discretion is judicial, and will be

guided by previously adjudged cases. The rule as laid down in 1 Chit. C. L. 98, 99, is the true one; that "it is not usual for this Court to bail, in cases of felony, unless when in consequence of the defect of the commitment, and of the examination and depositions, it appears doubtful whether any offence has been committed." A defect in the mittimus alone, has been shown not to be a ground of bail. This has not and will not be denied.

Is this application, then, warranted by any of the adjudged cases ? We agree, that in looking to these, a distinction should be kept in view between this high tribunal and the inferior magistrates, whose powers, in regard to bail, are limited; but is there a single case presenting the strong circumstances of the present against the prisoner, a plain manslaughter at least, and, beyond much doubt, a technical murder, in which bail was allowed? The rolls copied into Coke's Entries, which are relied upon, could not, in their nature, present the facts upon which the Court proceeded to bail. The depositions or evidence were no part of the record. Beside the fact, that guilt or innocence hangs indifferent between the prisoner and the crown, there are various other circumstances by which the Court might have been guided, in letting to bail. One is, a session past. (*Fitzpatrick's case*, 1 Salk. 103.) So even after conviction, where the prisoner is entitled to his clergy, he may be bailed; (*Lisle's case*, id.;) though this was denied in one instance. (*The King* v. *Keat*, id.) So if the prisoner's life be in danger, from imprisonment. (*Lord Aylesbury's case*, id.) But these and the like circumstances aside, it is enough that the evidence affects the prisoner, in the case of murder. (*Anon.* 1 Salk. 104.) The practice being thus settled, that it is not a matter of course to bail, leaves no doubt that in the cases cited from Co. Entries, there must have been special grounds for the entry upon the roll, which could not appear there. In one of those very cases, the prisoner finally pleaded a pardon. This is plainly one case in which the Court will bail. (*Armstrong* v. *Lisle*, 12 Mod. 108.) Indeed, they will do so in the case of an approver, who merely has a right to a pardon. (*Rex* v. *Rudd*, Cowp. 331, 334.) All these, and the

like cases, are plainly exceptions to the general rule, that the Court will not bail where the guilt is plain. The 2 Hawk. ch. 15, s. 80, cited for the prisoner, also supports the rule. He says if the prisoner be notoriously guilty of manslaughter, not by *confession* merely, as the counsel for the prisoner have it, but by confession or *otherwise*, he cannot be bailed. Bulstr. 85, is not at all inconsistent with this rule; and *The King* v. *Poynes*, (3 Bulstr. 113,) supports it strongly. *Herbert & Vaughan's case*, (Latch. 12,) presents a set of special circumstances; and Selfridge's application for bail passed without objection. *Goodwin's case*, was singularly special in its circumstances; and on examining it, the Court will find its general doctrine against bail in a case like the present. That case was once up before the sessions of New York; and Mr Colden, the then mayor, considered it very fully, and limited the exercise of the power to bail, to the instances in which we admit it may be exercised. After an indictment for manslaughter, he held that the prisoner could not be bailed till something was shown from which he might be presumed innocent. (1 Wheeler's Criminal Cases, 435, 437.) Afterwards the case came on for trial upon the indictment; the jury disagreed; and the late Chief Justice, in the same case, and same book, (p. 443,) considers the guilt and innocence of the prisoner, as standing so far indifferent as to warrant his being bailed. It is said in Com. Dig. *Bail*, (F. 3,) that the K. B. will not bail in manslaughter, unless there be a reasonable cause. Bail was denied to two English noblemen indicted for manslaughter. (Styles, 371.)

We have been referred, through *Goodwin's case*, to two cases in Strange, (*Rex* v. *Dalton*, 2 Str. 911, and *Rex* v. *Magrath*, id. 1242.) In *Rex* v. *Dalton*, we have only the dictum of a single judge, at his dwelling house; no particular circumstances are stated; and the instance put there of Clifton's case sustains the right of the Court to deny bail on the ground of the offence being murder, though the coroner's inquest calls it manslaughter, if the depositions will carry it beyond mere manslaughter. *Rex* v. *Magrath* comes to us also equally naked of all circumstances; and

the only point in question was evidently, whether the Court would look beyond the inquisition, in order to see the real facts. That case refers to one, for its support, in which the application was denied, (*Anon.* 1 Salk. 104,) upon the very principles for which we contend : and leaves a very fair in ference that there must have been circumstances not men tioned by the reporter. Indeed, Strange's cases generally too much deserve the criticism of Mr. Justice Foster, that he is over studious of brevity, omitting many of the material circumstances upon which cases turned. When *Goodwin's case* was before the New York sessions, the mayor declared there was not a single English case cited which questioned the rule upon which he proceeded. But suppose the cases in Strange to question it ; are they to sweep away the long settled doctrine upon this question, and arrest the whole current of decisions both before and since ? That these cases are not now considered authority in England, in their naked state, I refer to *The King* v. *Jones*, (1 Barnw. & Alders. 209,) where counsel deemed it necessary to show on a mere commitment, before indictment, for a manslaughter, that the deceased fell in a fight provoked by himself. Upon this proof, the Court allowed bail. That case does no more than follow up *The King* v. *Marks and others*, (3 East, 157,) already stated by my associate counsel. Ld. Ellenborough, in that case, puts the question upon doubt as to the truth of the charge ; and the Judges all concur with him in putting the case upon its doubtful character, either in law or fact, or both.

In this view of the matter, it is not material whether the case be murder or manslaughter. The rule is the same in England as to both ; for they are both capital.

If there be any distinction in this country, we then say the prisoner should not be bailed, because he is guilty of murder. The authority cited by Mr. Wilcox shows it a murder, if it followed a riot. That here was a riot, I refer to 1 Russell on Crimes, 354, 355 ; 1 East's P. C. 257, s. 33. Where homicide is committed, it will be intended to be murder, and it lies with the offender to reduce it to an inferior crime by proof on his part. It is not enough for this purpose, to say

that the affair was sudden. The act must arise from a provocation legally sufficient. It must arise from a cause which overrules and controls human reason. The cause must be adequate to the effect. Wherever it appears that the crime was, *at the moment*, though in consequence of a sudden quarrel, deliberately and intentionally executed, the killing is murder in the first degree. (*Commonwealth* v. *Dougherty*, 1 Browne's Penn. Rep. Appendix, xviii.)

In this case, the attack did not proceed originally from the deceased. It came from the prisoner. The deceased was almost continually on the retreat. Was it ever heard of, that the blow which is necessary for one's defence should mitigate the crime of the adversary who kills him, from murder to manslaughter ? The blows which the deceased gave were mere efforts of self defence. To mitigate the crime, they must clearly appear to have proceeded from a provocation not sought by the party. Nor is it every attack, however trifling and disproportionate, which will have this effect. The law, indeed, makes great allowance for human frailty. It will not inquire whether the precise pound of flesh has been taken. But if a man will take punishment into his own hand, it will see to it, that he shall exercise it in mercy.

It has been intimated, and how far it may hereafter be insisted on I know not, that the killing in this case was no more than mere excusable homicide. I will not detain the Court by citing cases on a point so plain. Because jurors may have relaxed the rules of law in Selfridge's and Goodwin's, and other cases, these furnish no reasons for the Court. to do so. To reduce the crime to manslaughter, there must be a sudden affray conducted on equal terms. (1 Russell's Cr. L. 613, 646, 7, 660, 1. 1 East's C. L. 215, 234, 5, 6. 2 Ld. Raym. 1496. Foster's C. L. 295. *Brown's case*, Leach, 151. *The King* v. *Snow*, id. 155. *The Commonwealth* v. *Dougherty*, 1 Brown's Penn. Rep. Appendix, xxii, xxiii.)

At a subsequent day, the attorney general mentioned to the Court 1 Chit. C. L. 113, as relating to the course the Court usually take when a motion is made for the allowance of bail upon a charge of homicide.

*E. Williams*, in reply.   When my associate counsel ad-
mitted that we cannot call upon the Court to bail the pri-
soner as a matter of right, but of discretion, he conceded all
that can be claimed.    In this country, I may say, that a
prisoner is, *prima facie*, entitled to bail ; and it lies with
the people to show circumstances, which take the case out
of the rule.    I knew there were English cases which
might be urged against this rule ; but they are more pro-
perly attributable to the extreme severity of the British pe-
nal code.  It is conceded to us that this Court may bail in all
cases ; but it is denied that they ever will do it in cases
of felonious homicide, unless induced by extenuating cir-
cumstances ;  or rather where, from the proof, guilt or in-
nocence appears to be indifferent.    The rule, as laid down
by the late Ch. Justice, in *Goodwin's case*, is undoubtedly
the true one : " That the judges will in general exercise
the power of bailing in favor of a prisoner in every case
not capital."  (1 Wheeler's Criminal Cases, 445.)   Then,
in all cases *not capital*, the power of bailing is to be exer-
cised.    If the prisoner is forthcoming to take his trial, the
end of the law is answered.   And the doctrine applies with
peculiar force to the crime of manslaughter ; which is not
only *never capital*, under our system of criminal law, but
ranges through an infinite variety of light and shade, from
mere excusable homicide to malignant murder.  If you dis-
allow bail, the offender may be punished for the crime be-
fore he is tried, with a severity as great, and for a term near-
ly as long, as after a sentence of the law is pronounced.  Sup-
pose an homicide felonious in a mere technical sense ;  all
but justifiable ;  a case in which the offender would, of
course, be pardoned ;  ought the prisoner to be bailed either
before, or after the trial ?   Actual pardon is seldom granted
till after trial ;  and shall he in the mean time be confined
with the same rigor as the most atrocious criminal ; though
it be seen that on conviction he will be pardoned of course ?
All this for the mere sake of form and show ?   The Eng-
lish criminal code is founded in terror ;  ours in reformation.
It may be important in England to secure the crimina.
as a pageant.    With us the object is to make punishment
certain, in order to reform.   It lies with the public prosecu-

ALBANY,
Oct. 1825.

Ex parte
Tayloe

tor to show that the case is an exception to these principles.

It is said that, to warrant bail, the guilt and innocence of the prisoner must hang in equal scales. Who holds the scales? If the law, they are always equal. If the Judge, different opinions may prevail at different times upon the same circumstances. If the rule be one of law, there must be some evidence to which the law can apply itself. After conviction, the matter is adjudged against the prisoner; and not till then does the law esteem him guilty, unless it be upon confession deliberately made in the face of the Court. But it is here said, the crime may be substantiated in any other way. This is not so. After conviction, if there be mitigating circumstances, entitling the party to a pardon or to a new trial, he may yet be bailed; and it is here only, that the doctrine contended for against us can apply, under our mitigated system of criminal punishment. The reason having ceased with us, the severity of the English law has ceased also, as it would under their own government in a like case. Shall we demand the extravagant security of personal imprisonment, upon the mere fiction that a crime is capital, when the semblance of such a character has been legally abolished?

Are affidavits, showing the probability of guilt, enough to call for the exercise of the English rule? *Goodwin's case*, (1 Wheeler's Criminal Cases, 434,) was decided by an inferior court, which proceeded mainly upon the ground that a coroner's inquisition of murder had been found upon the case. This they considered as *prima facie* evidence that there was murder, though the regular grand inquest had found manslaughter merely. Another reason given against bail was somewhat more popular than legal; that to allow bail would be placing the poor and rich upon an unequal footing. The preference of the rich man to the poor one, pervades not only our criminal, but our civil jurisprudence. The one can give bail, or pay his debts; the other cannot, and must be imprisoned; yet, I imagine, this was never before urged as a reason why the rich man should be denied bail altogether. When the case of Goodwin afterwards

came before the late Ch. Justice, a man who was never yet accused of wanting firmness in the adminstration of justice, he viewed the matter in this light; and in his own clear and forcible manner laid down and vindicated the rule which we have cited, and by which we are willing to abide in the decision of this cause. It is evident from the report of Selfridge's trial, that both the Court and the Attorney General of our neighboring state, Massachusetts, considered the law as perfectly well settled in favor of bail, as a matter of course upon an indictment for manslaughter. If this be a mere technical manslaughter, it is not only the right, but the duty of the Court to bail. Selfridge's trial also places the law of self defence on a very high and elevated ground; and contains all I could wish to say on the subject of the nature and mitigated character of the offence charged against the prisoner. If the act be merely rash and indiscreet, it is manslaughter; if the mere effect of passion, it is manslaughter; if deliberate, and evincing a depraved heart, it is murder. It is not necessary that human reason should be dethroned, to reduce the act of killing below murder. The mere ·tilting the bench on which the prisoner sat, was, in one case, held enough; and the father, who pursued and killed the man that had abused his child, was, out of respect to human frailty, held guilty of manslaughter merely.

The counsel also considered the depositions at large; and insisted that the offence in proof did not amount even to manslaughter.

SAVAGE, Ch. Justice. The power of this Court to bail in all cases of crimes punishable by our laws, is not questioned. And whether the prisoner is to be bailed or remanded, rests in the discretion of the Court. That discretion is to be guided by the circumstances of the case, and a consideration of the authorities applicable to those circumstances.

The writ was allowed in this case for a defect apparent upon the face of the warrant of commitment. No affidavit, therefore, was necessary on the part of the prisoner, stating the circumstances which he might consider as entitling him to relief. But in all cases on *habeas corpus*, previous to in-

dictment, the Court will look into the depositions before the magistrate, or before the coroner's inquest; and though the commitment be full and in due form, yet, if the testimony proves no crime, the Court will discharge or bail; and though the commitment be defective, yet, if the depositions contain evidence of an offence not bailable, the prisoner will be remanded.

ALBANY,
Oct. 1825.

Ex parte
Taylor

The coroner's inquest has charged the prisoner with having committed that species of felonious homicide which is in law denominated manslaughter. This offence differs from murder, in the absence of malice.

Murder is well defined to be the voluntarily killing any person, of malice aforethought, either express, or implied by law. Manslaughter differs in this, that though the act which occasions the death be unlawful, or likely to be attended with bodily mischief, yet the malice, either express or implied, which is the very essence of murder, is presumed to be wanting; and the act being imputed to the infirmity of human nature, the punishment is proportionably lenient.

The counsel for the prisoner contend that the facts, as proved by the depositions, do not amount to manslaughter; but even if they do, yet, unless the prisoner's guilt be established by his own confession, he is entitled to bail, and we are referred to several authorities on the subject, some of which I shall notice.

Hawkins, B. 2, ch. 15, s. 40 and 80. The rule, as here laid down, I take to be the correct one on the question of bail. It is this: that persons convicted of felony, or who have confessed their guilt, or are notoriously guilty of treason or manslaughter, by their own confession or otherwise, are not to be admitted to bail, without some special motive to induce the Court to grant it. For, says the learned writer, bail is only proper where it stands indifferent whether the party be guilty or innocent of the accusation against him, as it often does before his trial; but where that indifferency is removed, it would, generally speaking, be absurd to bail him.

Two cases are cited from Strange, to show that bail is a matter of course in manslaughter. In *Rex* v. *Dalton*, (2 Str.

911,) before Lord Raymond at chambers, he is made to say, that if the depositions amounted only. to manslaughter, he would bail, though the coroner's inquest had found it murder; that Lord Mohun's case, in Salk. 104, was in point; and that the Lords bailed him after an indictment for murder.

In *Rex* v. *Magrath*, (2 Str. 1242,) the whole report is this; "He was committed for manslaughter; and it appearing to be no more, upon the depositions before the coroner, the Court admitted him to bail, according to Salk. 104. Both these cases are supposed to be supported by Lord Mohun's case, in 1 Salk. 104, which was as follows: "If a man be found guilty of murder by the coroner's inquest, we sometimes bail him, because the coroner proceeds upon depositions taken in writing, which we may look into. Otherwise, if a man be found guilty of murder by a grand jury; because the Court cannot take notice of their evidence, which they, by their oath, are bound to conceal." This case, as reported, certainly proves nothing. No circumstances are given; and, for aught that appears, the Court, on examining the depositions, might have been satisfied of the prisoner's innocence, or that the offence was below the degree of felonious homicide. And in Keath's case, (1 Salk. 103,) the same Court said that, in manslaughter, after conviction, no bail is allowed till clergy had. Even Lord Mohun's case has, in one instance at least, been disregarded, if not overruled. In *Rex* v. *Acton*, (2 Str. 851,) the Court refused to look into the depositions, and remanded the prisoner.

These cases from Salkeld and Strange, are, when fully considered, of little or no weight. Nor have they been followed in more modern times. In *The King* v. *Wyer*, (2 T. R. 77,) the prisoner's counsel moved that he might be bailed, on the ground that the offence charged was not *felony*, but the Court being of opinion that the offence was felony, the prisoner was remanded. In *The King* v. *Marks*, (3 East, 163,) Lord Ellenborough says: "As it appears, then, from the depositions, that there is a *corpus delicti*, within the meaning of the act of parliament, which constitutes it felony, it is our duty to remand the prisoner." The other

judges all concurred; and Le Blanc said, "If upon the depositions returned, the Court see that a felony has been committed, and that there is a reasonable ground of charge against the prisoners, they will not bail, but remand them."

The cases in this country, which may be considered as authority, are but few. In Selfridge's case, the prisoner was bailed without opposition: but on what circumstances we are not informed. It is surely not the practice of the Supreme Court of Massachusetts to bail of course in such cases, as appears by Trask's case, (15 Mass. Rep. 277.) He was refused bail, as it was uncertain whether Sampson, whom he had wounded, would not die. The case of *The People* v. *Goodwin*, before the late Chief Justice Spencer at chambers, (1 Wheeler's Criminal Cases, 443,) was much relied on by the prisoner's counsel. The practice of bailing. as laid down by Ch. Justice Spencer, is undoubtedly correct. He cites the cases from Strange and Salkeld, but does not follow them. He lays down the law from Hawkins, substantially. as before quoted; and upon that law he evidently acted in admitting the prisoner to bail. He says, " it appears to me, that from the facts before me, this conclusion is inevitable, that it is quite doubtful whether the prisoner is guilty. And I think it stands indifferent whether he is or not." He alludes to the circumstances of the trial, and to the fact that the jury could not agree, from which he draws an inference in favor of the prisoner's innocence. He then adds, " In such a case, as I understand the law, he is entitled to be bailed," thus distinctly placing the exercise of his discretionary power to bail, upon the probability of the prisoner's innocence. Ch. Justice Spencer does not say that persons charged with the offence of manslaughter are entitled to bail of course; but it is quite indifferent whether he is guilty. If the facts in the case now before the Court afford the same presumption of innocence, and it appear to the Court from the depositions, that it is quite indifferent whether he is guilty, then in my opinion, he ought to be bailed; otherwise not.

This necessarily leads to an examination of the testimony I shall, however, not enter into it in detail. but merely

state the substance. On the 19th of October last, Cran-dall, the deceased, a lad of 17, was at the academy in Kinderhook. He was ordered by one of the students, a small boy to leave the place where he was. He refused, but soon went away; the boy threatening to bring other boys to compel him. Shortly after, the deceased was met in the street, at some distance from the academy, by the same student and a larger boy. An angry conversation ensued, and a scuffle. Other students were sent for, and came; and, among them, was the prisoner. The school boys all attacked the deceased, and the prisoner threw a stick at him. The deceased defended himself as well as ne could. He retreated at times, and at times pursued some of the boys. At length he obtained a piece of board, with which he defended himself, and assailed his adversaries. Among others, he struck the prisoner with this piece of board, and thereupon the prisoner stabbed him with a jack knife, in the abdomen, of which wound he died.

The depositions containing these facts, show an offence which, in my judgment, is manslaughter at the least.

The contest in the books is, not whether death under such circumstances is manslaughter, but whether it is not murder. As we think the warrant is defective, the prisoner must be remanded upon a special rule.

SUTHERLAND, J. I have very little to say in addition to the remarks made by the Chief Justice. The power of this Court to bail in all cases whatsoever is indisputable, and was conceded by the counsel for the people. Hence, in whatever manner the Court may exercise this power, it can never be alleged, that the act is void for excess. But it is important that we should be governed, as far as may be, by rules. The necessity of confiding such a power to any Court is a subject of regret; but it is necessary in this as well as some other cases. It is clear, however, that the general rules which govern and confine the common magistrate in letting to bail, should never be departed from, except in extraordinary cases. Is the present case within those rules? The object of arrest and imprisonment is not to

ALBANY,
Oct. 1825.

Ex parte
Tayloe.

punish the delinquent; but to secure his forthcoming, to abide the punishment which may be inflicted by the sentence of the law, upon conviction, as was justly remarked by the late Chief Justice Spencer, in Goodwin's case. (Wheeler's Criminal Cases, 446, 7.) The principal consideration is, whether the nature of the crime be such as that a recognizance would operate to secure the prisoner's appearance. If so, it is proper to receive bail as a substitute for imprisonment. Where the punishment is directly, or in effect pecuniary merely, as by fine or temporary imprisonment for a misdemeanor, it is accordingly a matter of course to receive competent bail, proportioned to the probable amount of the ultimate penalty. There is little or no difficulty in saying what the amount should be; and it may, at any rate, be made perfectly adequate to the object. But when the punishment is either capital, or imprisonment may follow for a considerable length of time, in the state prison, at hard labor, or other degrading circumstances, for a crime involving moral turpitude, these are far different considerations; and the law proceeds upon this difference in allowing or denying bail. If capital, bail should not in general be allowed, because no pecuniary consideration can weigh against life; and where guilt is clear, and a rigorous and disgraceful imprisonment may follow for a great length of time, the presumption is strong that the accused will not appear, and surrender himself to the demands of justice, to avoid a mere forfeiture of property. The safest course, therefore, in cases of felony, where the guilt of the criminal is clear, is to deny bail. Hawkins, (B. 2, ch. 15, s. 40,) expresses himself more clearly and correctly to this point than any other author upon criminal law. He lays down the rule in terms, that in cases of felony, bail should be allowed only where the guilt or innocence of the prisoner is indifferent. His words are, " For bail is only proper where it stands indifferent, whether the party be guilty or innocent of the accusation against him." And he follows this with the distinct proposition, that where the guilt is not indifferent, in general, it would be absurd to bail him. Several of the authorities have been considered by the Chief Justice; and others will

be commented upon by Mr. Justice Woodworth. I shall not, therefore, go over them. I would merely observe, that I have found no case at war with the position of Hawkins. Of the two cases from Strange, *Rex* v. *Dalton*, (2 Str. 911,) and *Rex* v. *Magrath*, (id. 1242,) relied upon by the counsel for the prisoner, it is enough to say that there is, in the report, a total destitution of circumstances. Sufficient might, and probably did appear of the proof, to make them fit cases for bail. It is perfectly evident to me, on looking into those cases, and the cases upon which they were bottomed, that they were not reported with a view to settle the weight of proof which would warrant letting the prisoner to bail ; but rather to show what kind of proof is admissible upon the return of the *habeas corpus*. *Rex* v. *Magrath*, gives the authorities upon which both that and *Rex* v. *Dalton* proceeded. These were Clifton's case, and Lord Mohun's case. (1 Salk. 104.) In the first, bail was refused, because the crime was thought to be murder ; although the inquisition was manslaughter. The only point decided in Lord Mohun's case, was, that the Court would look into the depositions, upon the return of the *habeas corpus*, to see whether they warranted the finding of the inquest ; and in the two cases cited from Strange, the attention of the reporter seems confined to this single point. He, therefore, very naturally omits to notice the degree of the proof. His object was, to show that the finding of the inquest should not be conclusive ; though this would be otherwise, if an indictment had been regularly found by a grand jury ; that the depositions before the coroner, being in writing and taken publicly, may be looked into with propriety ; whereas, if the finding had been by a grand jury, who had pronounced the crime to be murder, this should not be questioned, upon a motion for bail ; because the evidence before the grand jury is taken orally, and in secret, and should not be disclosed. An indictment, found by them, is therefore very properly distinguished from the finding before the coroner. The indictment must be taken as conclusive upon the degree of the crime. The opinion of the Chief Justice, in *Rex* v. *Dalton*, wherein he says generally, that if the crime amounted

to manslaughter merely, bail might be received, goes beyond
the p⌐int intended to be presented by the reporter; and
must be taken in reference to some facts not mentioned by
him, because he did not think them material.  But if other-
wise ;  if the Chief Justice intended to be understood as lay-
ing down the rule broadly, and in the abstract, that bail
should be allowed of course in a case of manslaughter, his
opinion is opposed to repeated authorities of more modern
date.  From these, I feel fully warranted in saying that we
ought not to bail a prisoner, accused of manslaughter, un-
less there be a reasonable doubt of his guilt.  Selfridge's
case is not consistent with this rule.  In the history of his
trial, some of the circumstances which preceded it are men-
tioned.  Among these, his actual confinement for four months
previous to the indictment, appears.  If the practice in the
state of Massachusetts was to bail of course in manslaugh-
ter, he would never have been committed at all ; or would
have been immediately let out on bail.  True, he was final-
ly bailed after indictment; but the particular circumstan-
ces which warranted this, are not detailed in the report.  I
see it was proved in the course of the trial, that the prison-
er's health was very feeble.  Indeed, there may have been
many circumstances combined with this consideration, to
satisfy the Attorney General, and the Court, that no objection
could be made ; and what is material in weighing this au-
thority, *none was made* to his being bailed.

In this case, upon the *ex parte* depositions, which we have
examined, I do not think there is any rational doubt, that
the prisoner is guilty of manslaughter.  It is true, they are
*ex parte ;* and, for that reason, neither the depositions nor the
opinion which we give, can or ought to influence the final
determination upon his guilt or innocence ; but they are the
only medium through which we can look at the case ; and
afford the only lights to guide our discretion in granting or
refusing bail.  We speak of them in this view.  Upon the
evidence before us, on which alone we can act, I think the
prisoner ought not to be let to bail.

WOODWORTH, J.  Had this been an ordinary case, I
should have contented myself with the simple expression of

ALBANY,
Oct. 1825.

Ex parte
Tayloe

ALBANY,
Oct. 1825.

Ex parte
Tayloe.

an opinion. It is, however, important not only to the individual, whose liberty is involved in the decision we are to make, but as presenting several grave questions, in which the community at large have a deep interest.

These questions are, 1. on the supposition that the crime of manslaughter has been committed, can the prisoner be bailed? 2. Does the evidence before the Court make out a case of manslaughter?

Upon the first question, the power of this Court, in their discretion, to admit persons to bail in all cases whatsoever, was admitted upon the argument; and is abundantly proved by authority. (1 Chit. C. L. 98. 3 East, 163.) It was also conceded, and the same authorities prove, that the prisoner cannot claim bail as a matter of right. The inquiry follows in what manner is the discretion of the Court to be exercised? To say that bail must be allowed of course, where it may be collected from the evidence, that a felony has been committed, would leave no room for discretion, and utterly subvert the principle upon which the right to bail rests. Accordingly, the rule laid down by the later and more approved authorities is, that *unless it be doubtful whether a felony has been committed; and if, from the depositions, the Court can collect that a felony has been committed, they will not bail the prisoner.* (1 Chit. C. L. 99. 3 East, 157. 2 T. R. 267.) The Court look at the depositions, to see if enough is charged to justify a detainer of the prisoner, and put him upon his trial. (1 Chit. C. L. 113.) Hawk. B. 2, ch. 15, s. 80, says, " It is difficult to find an instance, where persons notoriously guilty of treason or manslaughter, by their own confession, or otherwise, have been admitted to bail, without some special motive to induce the Court to grant it." And he cites 1 Roll. 268, Raym. 381, 3 Bulstr. 113. In Com. Dig. *Bail,* (F. 3,) it is said, " the Court will not bail in treason, murder, manslaughter, &c. unless there be a reasonable cause;" and many cases are cited in support of the position. The law is laid down to the same effect in 4 Bl. Com. 299; and in *The King* v. *Marks,* (3 East, 165,) the rule is advanced in these cautious and qualified terms: The Court "will bail, whenever there is any doubt on the law, or the fact of the case."

Indeed, the whole current of authorities in the English books sanction this doctrine; and it cannot be overthrown by a few ancient cases, where, by the report, it seems bail was allowed in manslaughter, without special cause shown. As to the cases in Coke's Entries, 354 to 356, there may, as was observed at the bar, have been important circumstances which are not disclosed; and which could not properly be disclosed by the record. The compiler does not profess to give anything more than the mere form of the entry. We have a right to presume from the later authorities, that a proper case for bail was made out. *Lisle's case*, cited for the prisoner for Kelyng, 89, is stated generally to be a case of manslaughter; but the degree of proof is not given; and it would perhaps be sufficient to say, as of the entry in Coke, a proper case should be presumed to have been made out. But that case is contrary to Dyer, 179, pl. 42, (2 Eliz.) The words of the case in Dyer are, " A man found guilty of felonious homicide, before judgment, it was moved whether he was bailable; and held he was not; for the intendment of the law of bail is, that it stands indifferently whether he be guilty or not, until trial." As to the cases of *Rex* v. *Dalton*, (2 Str. 911,) and *Rex* v. *Magrath*, (id. 1242,) we are fortified in the belief that there was probably an omission to state the circumstances, by what Mr. Justice Foster says in his Crown Law, 294, of another case as reported by Strange. He complains that Strange was over studious of brevity; and instances *Rex* v. *Tranter*, (1 Str. 499,) which, from the facts reported, seems to be a case of murder, and yet was held manslaughter; but by a report of the same case in 6 St. Tr. 195, it appears that important circumstances were omitted by Strange. At most, these cases in Strange are solitary ones, and cannot stand against the uniform unbroken current of modern authority. The rule was well settled before it came under consideration in *Goodwin's case*, decided by the late Ch. Justice Spencer, (1 Wheeler's Criminal Cases, 446;) a jurist eminently deserving the encomium bestowed upon him by the prisoner's counsel. He found himself obliged to do no more than apply a rule which was well settled. He adverted to the cases in Strange; but was not

governed by them ; he uses nearly the same qualified lan guage, which I have cited from *The King* v. *Marks*, (3 East, 165.) *If it be doubtful whether the prisoner be guilty, or, if he may be innocent, in such a case, as he understood the law, he was entitled bail.* Undoubtedly, the true rule of law is here laid down by the Chief Justice ; and it is expressed with his usual precision and perspicuity.

The case of Selfridge was cited by the counsel for the prisoner. If that case had been discussed and decided by the Court upon the question of bail, it cannot weigh against the English authorities and our own. But the application to admit him to bail passed without opposition. The attorney and solicitor general are to be considered as consenting that he should be let to bail. They were in possession of all the testimony ; and making no opposition to his going at large upon bail, the Court might, from this circumstance alone, have inferred probable innocence. If, in the principal case, the Attorney General had arisen in his place, and stated to us that he had examined the testimony, and was convinced that it presented a question of so much doubt that bail would be proper, we should hardly have deemed it our duty to inquire farther. In Selfridge's case, the event proved the propriety of the course which was taken. Upon the trial, the following question was submitted by Judge Parker in his charge to the jury : " Whether the accused could probably have saved himself from death, or enormous bodily harm, by retreating to the wall, or throwing himself into the arms of friends who would protect him. This is the real stress of the case." The prisoner was acquitted.

The nature of the punishment must also be regarded, in deciding this question ; if guilty, the prisoner must suffer corporal imprisonment. When, therefore, the circumstances afford strong presumption of guilt, the accused, if bailed, would probably be induced to flight, in order to evade the punishment.

Again ; it was argued for the prisoner, that though his case be one of clear manslaughter, yet it is at most technically so, and is, in truth, of such a mitigated character as to admit of bail. But there is no authority which warrants us, upon

the question of bail, in being guided by the apparent degree of moral guilt. If it be clear that the offence has been committed, the prisoner must be remanded. The degree of criminality, or moral delinquency, to be gathered from the mitigating circumstances of the case, can be considered and weighed by that tribunal alone which is to fix the extent of the punishment.

According to the view which I have taken of the case, it becomes unnecessary to say whether the depositions make out the crime of murder; because I am perfectly well satisfied that if the show manslaughter, beyond all reasonable doubt, we ought not to bail.

2. Manslaughter is the unlawful killing without malice express or implied. (4 Bl. Com. 191.) To excuse a homicide, the person killing must have no other probable means of escaping from his assailant. (4 Bl. Com. 181.) " He who would excuse himself upon the foot of self-defence, must show that, before a mortal stroke given, he had declined any further combat, and retreated as far as he could ; and that he killed his adversary through mere necessity." (Foster's Cr. L. 277.) And in such case, " it mattereth not who gave the first blow." (Id. 1 Hale's P. C. 479.) " The fact of killing being proved, the necessity of so doing must be proved by the prisoner, unless it appears by the evidence produced against him." (1 East's C. L. 224. Foster's C. L. 255.) " If one seeing two fight, takes part with one of them, and kills the other, it is manslaughter."

The case must be tested by these principles. The tender years of the prisoner are not now in question. He is admitted to be above the age of discretion, after which he is legally capable of crime ; his youth can weigh nothing except in estimating the measure of his punishment. We are under the necessity of looking into the testimony, and of making such remarks as are due to the case, upon the facts as they are now presented. If the conclusions which we express prove finally prejudicial to the prisoner such a consequence is to be deprecated, but it arises from his own act in making the present application.

What, then, is the case before us ? I will merely glance at

ALBANY,
Oct. 1825.

Ex parte
Tayloe.

it, so far as may be necessary to justify the opinion we have formed. There is no reason to conclude that the deceased commenced the combat. He acted on the defensive after Gleason approached him with the boys from the academy. A conflict then ensued between the deceased and these boys; which was, for a while, conducted by the former without the use of any weapon. His stick was laid aside; sometime after which, he obtained a piece of board with which he defended himself. While thus employed, the prisoner voluntarily, and unnecessarily, engaged in the affray, joining the combatants in hostility to the deceased; and, indeed, must be considered as making the first assault. If not, how came he engaged? It is true that the deceased struck him with the piece of board; but there is no evidence that his life was in danger, or that great bodily harm was likely to ensue, either from the blow, or the instrument made use of. It does not appear that the prisoner retreated, and was pursued by the deceased; or that the deceased struck the prisoner more than once. It does not appear that the weapon would probably produce death, nor, by the effect produced, that great bodily harm was experienced by the prisoner.

On the law and the facts before us, therefore, I concur in the opinion that the application to let the prisoner to bail must be denied; and this on the ground that the depositions present a case of manslaughter, at least, clearly made out.

### RULE.

SUPREME COURT.

In the matter of Charles Tayloe.

Charles Tayloe being brought into Court, in custody of the keeper of the jail of the county of Columbia, by virtue of a writ of *habeas corpus*, it is ordered, that the said writ, and the return made thereto be filed; and upon reading the several depositions taken before Lucas Hoes and Barent Hoes, justices of the peace in and for the said county of Columbia, and their warrant of commitment thereupon; and also the depositions taken before Samuel Clary, a coroner in and for said county, upon an inquest taken upon the

body of one Eber L. Crandall; and the inquisition found by the jury, and upon hearing counsel as well for the people as the prisoner, it is ordered, that the said Charles Tayloe be discharged from his imprisonment by virtue of the warrants in said return mentioned; and that he, the said Charles Tayloe, be re-committed to the said keeper of the jail of the county of Columbia aforesaid, for unlawfully, wickedly and feloniously, stabbing and killing the said Eber L. Crandall, on or about the nineteenth day of October last past, at Kinderhook, in the said county of Columbia, to be, by the said keeper, kept in safe custody, without bail or mainprise, until he shall be thence discharged by due course of law.