Peck, C. <7.
It is claimed by one of the counsel for the defendant in error, that the instructions refused and those given and excepted to, were wholly irrelevant and are therefore no ground for reversal of the judgment, even if the court committed error therein.
In support of this proposition it is insisted, that the only issue presented by the pleadings was as to the truth of the return upon the plaintiffs’ execution, that the property specified therein had been previously levied upon by sheriff Brown under an execution from Franklin county, and inasmuch as the plaintiffs themselves, as shown by, their bill of exceptions, proved the fact that such previous levy had been made, the case should have ended then and there in a judgment, for the defendant, and that all subsequent steps in the case were immaterial, and could not prejudice defendant’s right to a judgment upon the issue submitted.
The objection originates in a misapprehension of the true scope and effect of the issue joined between the parties. It was not whether the mere form of a levy had been observed, but whether a valid levy had been made, and' whether that levy was subsisting, when its existence was thus asseverated in the return. The sheriff was excusing himself from performance of an official duty in selling property seized in execution. This could only be done by showing, that it was then subject to a prior lien, and not that it was once subject to *27 a lien which no longer possessed vitality. The mere proof, then, of a former levy, if originally valid, did not necessarily justify him, nor show that the return was true when it was made. Such a narrow construction of the averments creating the issue, is not in accordance with section 114 of the code, requiring a liberal construction, with a view to substantial justice between the parties.
The answer of the defendant itself avers, that the former levy was subsisting at the time the return was made, and the charge of the court also assumes the continued vitality of the1 levy, as a necessary element of the defense, and such, without doubt, is the true scope and effect of the issue joined between the parties.
We are not, therefore, precluded by the pleadings, from inquiring into the legal validity of the levy at the time the plaintiffs acquired an interest in the property, by its seizure-upon their execution.
Ch. J. Savage, in Russell v. Gibbs (5 Cow. 39), examines, at some length, the English and New York cases as to the effect of delay in the sale of property levied on execution, and arrives at the conclusion, that mere indulgence or negligence of the sheriff to proceed and sell, without any act of the plaintiff, will not render the levy fraudulent as to subsequent executions ; but that the rule is otherwise where the creditor himself directs or sanctions such delay. It is also said in-that case, that an unreasonable delay or omission to urge the-sheriff to do his duty, may, in some cases, be construed into a consent on the part of the creditor to such delay, and thus-postpone his lien to that of junior executions. These positions, thus qualified, are fully sustained by the authorities cited in the opinion, and supported by subsequent decisions in that and other states. 11 Wend. 552; 4 lb. 332 ;• 5 Hill, 377; 8 lb. 232; 4 Dali. 358 ; Gwynne on Sheriffs, 212, and cases cited.
It is said by Bronson, J., in 6 Hill, supra, that “in all cases where the first execution has lost its preference, something-was said by the plaintiff or his attorney, at the time the execution. was issued, or at some subsequent period, from which *28 the sheriff could reasonably infer that he was authorized to give indulgence, instead of complying strictly with the command of the writ.”
In New York the common law doctrine prevails, that the ■ execution of the writ is an entirety, consequently, the officer making a levy on execution, must complete the duty by a sale in pursuance of its mandate,and a subsequent vendi. or distringas, if issued to him, confers no new or additional authority, but only spurs him on, it is said, to a speedier execution of the power already conferred. Under our practice, however, a sheriff, who has returned the writ “levied, but not sold for want of time,” can not be required to proceed and sell until a vendi. is placed in his hands, for that purpose, by the creditor in execution.
The rule deducible from the cases cited, as applicable to our practice, in which, after return of execution “ not sold for want -of time,” the plaintiff must himself initiate the further proceedings to sell, is this, — that if there has been an unreasonable delay in completing the execution by a sale, at the instance and by the authority of the plaintiff, such unreasonable delay may have the effect of postponing his, in a certain sense, dormant process, to that of a more vigilant though junior- execution creditor. Mere delay, if not unreasonably, protracted, will not have such effect; but where the delay is unreasonable, in view of the rights of other creditors, the character and condition of the property levied on, and the uses to which it is, in the meantime, applied, it is just and proper that a limit should be placed upon the indulgence of the creditor holding such prior lien.
The question whether buch delay was reasonable or unreasonable in a given case, depends upon its particular circum- . stances and is therefore peculiarly a question for the jury, under the instructions of the court. It is manifest that a delay which is unreasonable in one case, by reason of the condition of the parties or the subject matter of the levy, would, under other circumstances, be altogether reasonable and proper.
The return of the property to the defendant after levy, to "be kept by him until required for sale, either with or without *29 security for its re-delivery, does not per se avoid the levy. The debtor thereby became the bailee of the property, and the officer was still constructively in possession. But such fact, coupled with others, relating to the intended duration of such possession; the authority delegated to the debtor or exercised by him with the knowledge and assent of the sheriff;, the uses to which it was, in the meantime, to be applied; the benefits, if any, resulting from its custody, and the subsequent delay in bringing the property to sale, may be of much significance in determining whether the levy was not, in part at least, designed to protect the property from seizure by other creditors, for the benefit of the debtor, and therefore fraudulent as to them.
In the case at bar, an execution in favor of the Exchange Bank of Columbus was levied September 11, 1857, upon a stallion, the property of Currier, and the execution thereupon returned to Franklin common pleas, “not sold for want of time.” No fui her execution was issued until November 8, 1858, nearly fon "teen months after return of the first, and. more than four months after a levy by plaintiffs upon the-same property. The sheriff upon making the levy returned the horse to defendant Currier, and permitted him to hire the horse out the ensuing season for his own benefit, the profits. greatly exceeding all expenses of keeping, and never interposed to prohibit such use, or claim for the execution creditor any part of the profits arising therefrom.
The officers of the bank may not have known how the horse was disposed of; but if so, they were willfully blind. The information conveyed by the return was sufficient to put them, as prudent men, upon inquiry as to the temporary disposition of the horse. The question would naturally occur, how and. and at whose expense is this horse to be supported while awaiting a sale ? And the answer to such inquiry, would, at once, have put them in possession of the facts, and rendered them responsible for further continuance of that condition of things. If, on the other hand, the bank and its officers were truly ignorant of the temporary disposition of the horse, and the authority conferred upon Currier, and are not chargeable *30 with notice of the acts of the officer in making disposition of the property levied on, which we by no means concede, still a failure by them- for more than fourteen months -thereafter to offer the horse for sale, would be a circumstance for the consideration of the jury, as tending to show that one, if not the principal object of the levy and its prolongation, was to shield the property from a seizure by other creditors for the benefit ■of the debtor.
In view of these circumstances it was error, we conceive, in the court to charge the jury, either as matter of law or as a foregone conclusion- of fact, that the levy of September 11, 1857, was, as against the plaintiffs, a valid and subsisting levy in June, 1858, when the horse was seized under their execution.
It was a question of fact peculiarly within the province of •the jury, to determine, under all the circumstances before them tending to show an abuse or perversion of the process of the court, and should have been submitted to them, under proper instructions.
It would also seem to follow, that the second instruction which was refused by the court, should have been given. It contemplates a voluntary delay on the part of the creditor, with a full knowledge of all the circumstances, to bring the property to sale within a reasonable time; and the court were asked to say to the jury, that such omission on the part of the levying creditor would be prima facie fraudulent as to junior ■executions.
We see no objection to such an instruction except the very general language in which it is clothed, and there were circumstances in evidence, certainly, tending to establish the facts which it assumes. ✓
The question whether the delay was unreasonable or not, was to be determined in view of all the facts and circumstances surrounding the parties and the subject matter; and the court were merely asked to say, that such unreasonable : delay, if found to exist, would be fraudulent as to junior executions, unless it was explained away by positive or circum-sta-ntial proof. Such unexplained delay, would show an abuse *31 of process to tbe injury of tbe plaintiffs in tbe junior execution, by tbe postponement of tbeir remedy and tbe application of tbe profits arising from tbe temporary use of tbe property levied on, to tbeir injury. It enabled tbe defendant in execution to pocket tbe profits arising from its use while tbe sale was suspended, which should have been applied in discharge of tbe prior lien; or what amounts to tbe same thing, to appropriate those profits to bis other creditors as against tbe plaintiffs, who by tbeir superior diligence bad acquired a right to its application for tbeir benefit.
Judgment reversed and cause remanded to tbe court of common pleas for further proceedings.
G-holson, Brinkerhoff, Scott, and Ranney, J.J., concurred.