*Court of Sessions, May,* 1813.

The People *vs.* James Conger. *Demurrer.*

Statement of the case.    This was an indictment under the statute for obtaining the goods of Alexander Watson, on the 15th of December, 1818, by false pretences.

The indictment alledged, that the defendant, intending NEW YORK, to impose upon Watson, and to cheat and defraud him, " did falsely pretend, to the said Alexander Watson, that he, the said James Conger, was a person of *wealth* and *credit*," and wished to purchase a quantity of goods of Watson.    That the defendant examined a quantity of goods, and selected certain articles, which are specified in the indictment, by the insertion of what appears to be a copy of a bill of parcels, with the qualities, quantities pieces of each article, and the amount in figures, and with the abbreviations commonly used by merchants in their accounts.    It is averred that the goods so selected by the defendant were of the value of $336 95, And that he ordered them to be sent to his store ;  " and then and there represented, that upon the delivery of the said goods, the money would be paid."   " That trusting to the *promises* and *assurances* of the defendant, and *being deceived by his false pretences*," Watson sent the goods to the store of the defendant.   " Whereas in truth and in fact, the defendant was not a  person of wealth and credit, as he had falsely represented."    And whereas " he had not the *money* ready to pay for the said goods on the delivery, as he falsely pretended."

(The indictment then proceeds to aver other facts, viz: that the defendant did not pay any thing for the goods. That he intended to cheat Watson of them.    That after he got the goods in his possession, instead of paying for them, he sent Watson a check for the money, which the defendant represented was good, but which was of no value, and which he knew would not be paid ; that he gave the check, and made the false representation that it was

NEW YORK, good to induce Watson to leave the goods in his possession, till he had assigned them to other persons.

The indictment also avers, that the defendant has never paid, and never intended to pay, any thing for the goods, and concludes against the form of the statute.

To this indictment there was a general demurrer, and the following is the decision of the court upon it.

*Colden, Mayor.* The court is now to decide on the validity of the indictment ; or in other words, supposing all the facts stated in the indictment to be true, or to have been proved, whether the defendant could be subjected to punishment as an offender either against the common or statute law. For it is now settled, that upon an indictment sufficiently stating a common law offence, a defendant may be convicted, though it concludes against the form of the statute, if the evidence should not be sufficient to support the charge under the statute.   5 T. R. 162.  3 Bac. Abr. 571.

*An indictment may be good at common law tho' it concludes against the form of the statute.*

A due consideration of the indictment will very much abridge the matter, which, in the opinion of the court, is now properly submitted for their determination.

*Certainty in the description of goods in an indictment for false pretences.*
2 Hale, 182.
Hawk. b. 2. c. 25.  § 74.  1 Hale, 182.
Lamb, 497.

A general objection might be taken as to the manner in which the goods and chattels, charged to have been obtained, must be described in a charge of this nature, with as much accuracy and particularity as *goods stolen* must be in an indictment for larceny.   It may well be questioned, whether describing the goods, by inserting a copy of the bill of parcels, with their names, quantities, qualities, pieces, and amount in figures, and with abbreviations intelligible only to mercantile traders, as, for

instance, 1 pe. fine blk. cloth 22 yds., 20 s. per yd., $71 50: NEW-YORK, 2 do. superfine mixed and brown, 371-4—$5 75—214. 19., however short and convenient it may be, is sufficient.

Though it be not necessary to describe the false pretences with greater minuteness than that with which they were presented to the mind of the party injured at the time the imposition was practiced; yet, it is well established that they must be stated particularly and truly; for where it was alleged that the defendant had said, that he had paid a sum of money in to the Bank of England, and it was proved that he had merely said that the money had been paid at the bank, the variance was held fatal. There must also be substantive, absolute negations of the facts which were represented. It is not sufficient, indeed it is not necessary, (1 Starkie, 90,) to charge that the defendant did "*falsely* pretend," but there must be formal averments that his representations are untrue. 2 Starkie, 403, n. 3 Chitty, 999. 2 Term. Rep. 581. 1 Camp. 212. 496. 2 East, 30.

*The false pretences must particularly and truly stated in the indictment, 3 T R. 581 2 M. & S 379. 387. Cro. Eliz. 490 Cro. Jac. 20. 2 Mod. 316; 2 Str. 1127. 1 Campb. 212. 3 T. R. 102.*

*Must be formal negations to the false representations*

The indictment in this case states, first, that the defendant pretended he was a person of wealth and credit; and secondly, that he represented " *that on the delivery of the goods the money would be paid.*" These are the only pretences made by the defendant, previously to the goods having been delivered to him; of course, they could not have been obtained on any others; however false and fraudulent his subsequent representations may have been, they never could have been the means of obtaining the goods. All the charges therefore in the indictment which relate to the defendant's conduct after he

*The false pretences used must be before the goods are delivered. Abraham Collin's case, 4 City Hall Rec. 143. Stuyvesant's case, ib 156.*

NEW-YORK, obtained possession of the goods, and the pretences which he made to induce, as the indictment states, the prosecutor to leave the property in his possession until the defendant could make a fraudulent disposition of them, we consider as absolutely nugatory, and the indictment would be just as good as it now is, if all these allegations, as to the defendant's subsequent conduct, were omitted.

This indictment seems to have been framed on a precedent found in Chitty, vol. 3, p. 1007. where goods were sent by a shopman, according to order, and delivery of them obtained from him by giving him a spurious draft which was represented as good.    But it may be observed, that in that case, all the representations and false pretences were made *before* the shopman parted with the possession of the goods, and of course, before they were obtained by the defendant.

The only false pretences, therefore, charged in the indictment are, in the opinion of the court, the two which have before been specified.

1.    That the defendant represented himself to be a person of wealth and credit, is sufficiently negatived by a subsequent categorical averment, that in truth and in fact, the defendant was not a person of wealth and credit, as he had falsely pretended.

There is an averment, that the defendant " had not the money ready to pay for the goods, on the delivery, as he falsely pretended," but this is not the denial of the truth of any pretence charged in the indictment.

With respect to this last-mentioned pretence, it might NEW-YORK, be objected, also that it is not laid in the indictment as a false pretence, but it is said that the defendant *repre-* *sented*, that upon the delivery of the goods the money would be paid for them. And it might be further objected, that this is not a representation of a fact, but rather a promise as to what the defendant would do *after* the delivery.

It is stated in the indictment that the defendant falsely pretended that he wished to purchase a quantity of goods of the prosecutor. There is not only no negation of the truth of the fact here represented, but, on the contrary, the indictment repeatedly avers, a little inconsistently it would seem with the nature of the whole charge, that the defendant did purchase the goods of the prosecutor.

It may be said if he purchased them, he did not obtain them by false pretences; and that so the indictment is inconsistent upon the whole.; the court considers the pretence that the defendant was a person of wealth and credit the only one in the indictment properly charged, and properly negatived.

The sole question, then, for the court now to decide is, whether an indictment, which charges a person with having obtained the goods of another, by falsely representing himself a man of wealth and credit, can be supported.

The question might be disposed of to the satisfaction of the court, in a very few words. But indictments of this nature are becoming so frequent ; the cases in the

NEW-YORK, books are so numerous ; and the decisions of the courts so often appear at variance with each other, that it becomes very desirable that some general rules upon this subject should be distinctly laid down and established, so that it may be known with some sort of precision, what does, and what does not constitute an offence of this description.

Fraud at common law. 6 Mod. 42. 7 Wils. 301. Say. 146. 205. 1 Bl. Rep. 274 Wheatley's case, 2 Burr. 1125. Jones' case, 1 Salk 379. Loras' case, 3 T. R, 365. See Powell's case, 7 Dall. Rep. 47.

Previously to the enactment of any statute on the subject of cheating, a person might, by many deceitful and fraudulent contrivances or pretences, obtain the property of another without being punishable by a criminal proceeding. For no fraud could be the object of a criminal prosecution, unless it were of that kind which in its nature, was calculated to defraud numbers, as false weights or measures, false dice and &c. Rex v. Wheatly, 2 Burr. 1025. People v. Babcok, 7 Johns. Rep. 201. 1 Hardw. 187-8.

Not a good indictment at common law.

The fraud charged in the indictment which we are now considering, is certainly not of this description, and, therefore, we can have no hesitation in deciding that it is not a good indictment at common law.

Construction of the stat. 33 Hen. 8. c. 1. 2 East's P. C. 687. 2 Burr. 1128. 6 T. R. 565. 2 Ld. Raym. 1466. 3 Campb. 370

It was very early perceived that some statuable provision was necessary to punish a great variety of frauds, which might be practiced with impunity under the common law. The parliament of England made a partial provision on this subject by the statute of 33 Hen. 8. c. 1. which enacted that if any man should fraudulently get into his possession the goods, chattels, or other things of another, by color of any false privity, token or counterfeit letter, he should suffer punishment.

The provision of this statute was construed to extend only to frauds committed by the exhibition of some visible sign or tangible substance, as a token whereby a person was defrauded of his goods in consequence of his having been induced to part with them upon a credit given to the token beyond, other than, what the person, obtaining the goods, would have had without token. 1 Burn's Just, 355. 1 East's C. L. 827.

NEW YORK,
Chitty's C. L. 758.

Cheats or frauds founded on mere oral representations, where no sign or token was used, was impunishable under this statute.

2 East P. C. 689.

The English parliament, therefore, again legislated on this subject, and passed the statute 30 Geo. 2. c. 24. by which it is enacted, that all persons who, by false pretence or pretences, should obtain from any person money, goods, wares, or merchandizes, with intent to cheat or defraud any person of the same, should be deemed offenders.

False pretences.
For the construction of this statute
see 3 T. R. 98. 103. East's P. C. 833. 2. East's R. 30. 2 Leach, 614.

Our legislature has adopted this statute, with some alteration as to the thing obtained, and as to the object of the fraud. By our act the offence is made to consist in knowingly and designedly, by false pretence, obtaining from any person any money, goods, or chattels, or " *other* *effects whatsoever*," with intent to defraud or cheat any person, " or body politic or corporate."

12 Johns. Rep. 292. 1 City Hall. Rec 83. 89. 116. 140. Vol. 3. 118. Vol. 4. 61.

We have no statute similar to the statute of Henry 8th, relative, to false tokens or counterfeit letters, because the statute next precedingly mentioned, is a full provision in respect to the offences contemplated by the

NEW YORK, statute of Henry 8th.   For though every false pretence would not be a false token, yet every false token, accompanied with a false representation, (as it necessarily must be, or it never could be the means of gaining credit,) and every counterfeit letter, by which money or effects are obtained, must be by false pretence.

It is obvious, then, that this statute has a very extensive application, and it is not surprising that its operation should have been frequently invoked in dealing and commercial countries.

We do not propose to refer to the numerous and sometimes apparently contradictory cases on this subject, to be found in the books, with the view we have before mentioned, we intend to endeavor to draw from the decided cases some rules which will be generally applicable,   We do not think that this will be attended with so much difficulty as might be at first supposed, because we believe, that the seeming opposition of authorities, frequently arises from not observing whether the indictments to which they refer be at common law, under the statute of Henry 8th, or under the statute of false pre· tences.

We should be involved in inextricable difficulties if we should adopt the lexicographic definition or explanation of the word *pretence*.   We must endeavor to find its legal or technichal meaning ; and this we can only do by referring to cases in which its legal import has been con_sidered.

1st. A false pretence must relate to an existing fact. NEW-YORK, Any representation as to what will or will not happen, cannot, in our opinion, be considered as a false pretence. This makes the distinction between a false representation and a false pretence.

Definition of the terms "false pretences."

So, if a man obtain goods by promising to pay cash for them, or to pay for them at a future time, or gives his note for them, with assurances that it shall be paid at its maturity, when, at the same time, he does not intend to pay; these are false promises, because there is no pretence that any fact exists, there is no representation as to what is then presently untrue.

See Abraham Collins' case, 4 City Hall Recorder p. 143.

So, if goods were obtained by promising to give the note or endorsement of a third person, these are equally false promises; but it would be different, if one were to obtain goods by falsely representing, that he had been commissioned to ship them, or that he had made a bargain to sell them, for an advanced price, these would be false representations, as to the existing facts, and therefore might be considered as false pretences; we say might be so considered, because it will be seen in the sequal, that we are not of opinion that every misrepresentation, as to an existing fact, must be taken as such a false pretence as will support an indictment. For what might be considered as sufficient for this purpose under some circumstances, might not be so under others. Under some circumstances, such falsehoods might be very imposing; under others, incapable of deceiving any rational creature. The consideration of these circumstances may be the province of the jury. East's C. L. 828.

NEW YORK,    It has been said, that it is no objection that the offence consists in the representation of some transaction to take place at a future time, 3, Wil. Ab. 549., and for this the case of the King against Young and others, p. 98 is cited. But there, though the race, according to the representation, was to take place the next day, yet it was pretended that the bet had been previously made, and the averment of the falsehood was, that the bet had not been made. It is obvious, therefore, that the representation as to the bet, and not as to the race, was considered as the false pretence.

Must be by words written or spoken by the party, or by others, and assented to by him. A false show or appearance is not sufficient.

Secondly. We believe it may be stated, as a general rule, at least, that there must be a false representation by words written or spoken, to constitute a false pretence.— That is, words used by the offender himself, or used by another, and assented to by him. We do not believe that a mere false show, or appearance however specious or successful it may be, will support a prosecution under this statute. As, if a person, to give himself a false credit, and with an intent to deceive, should fill his store with empty bales or boxes, and thereby make it to be believed, that he was doing great business; or if he should go to a counter with a purse of good or bad guineas, or with genuine or counterfeit bank notes, and obtain goods by inducing a belief by such show, that he intended to be a cash purchaser ; we do not think that one, by exhibiting those false appearances, would subject himself to a criminal prosecution, any more than if he obtained a false credit by living in a style beyond his means, or any more than if he should, without ever intending to

pay for it, obtain credit for a pound of tea, by going to a NEW-YORK, grocery in a coach and six.

We think the limitation of the legal or the technical meaning of the words *false pretences* presented by the two foregoing rules, not only sanctioned by all the authorities, but it appears to the court absolutely necessary.— For if we extend the meaning of these words beyond these limits, it is impossible to say, what may not be taken as. a false pretence. Every expression, act, or show, used to enhance the appearance of, or to give a fictitious value to the articles of a man's trade, a parade of living adopted to raise or maintain a credit by a show of wealth, might be considered as criminal offences ; every person who should obtain goods on credit, when he knew he was. bankrupt, and could not pay for them, or who should give for articles purchased, a check or note which he knew he had not, and would not have funds to meet, might be considered as obtaining goods by false pretences. But without these false appearances are supported by some verbal false representations, we do not believe they can be considered as objects of criminal prosecutions.

*Should not be extended beyond the limits before set down.*

We will not say that there may not be exceptions to this general rule, that words or declarations, used by the party, or assented to by him, are necessary to constitute a false pretence ; but we cannot anticipate an exception, and it is very certain that none is afforded by any of the very numerous cases relative to this crime, which are to be found in the English, and in our own books. Even under the statute of Henry 8th, relative to false tokens, there is no instance of an indictment being supported

*Must be by words written or spoken : Exceptions.*

NEW-YORK, where the token was not presented with some verbal or written misrepresentation.

Where the offence is committed by several, as it may be, it is not necessary that they should all speak ; but in such case, as in many other instances, the words and acts of one are to be imputed to all parties present, and co-oporating in the perpetration of the crime.   2 Leach, 572. 3 Term Rep. 98.

14 Mass. Rep. 207.

It is very possible, also, that dumb persons may be convicted under this statute; but then we must recollect that signs are their language.   It is one in which they are allowed to speak as witnesses.   Nor would it be a just exception to the rule, if a person should be convicted, who made a false representation of an existing fact by signs, under the pretence of being dumb.

6 Mod. 42. 1 Wils. 301.Say 146. 1 Black Rep. 274. Say 205. Cowper, 323.   Burr, 1125.

There is a class of cases that are arranged in the books under this head, which might appear not to be in conformity with the general rule we have adopted.   They are those of persons who have been convicted and punished for selling by false weights or measures, for playing with false dice, or for selling adulterated articles of provisions, &c.   But it may be observed that these convictions, where there have been no false declarations or representations, have ensued on prosecutions at common law, and the parties have been convicted, not of obtaining goods by false pretences, but as cheats in the way of trade, or as committing offences against the public.

3dly. A false pretence must not only be a misrepresent- NEW YORK, ation, as to an existing fact, but it must be a wilful mis- The false representation, or, in other words, the party must know representation that he is making a false representation. This is not only ful. implied by the word *pretence* itself, but is shown by other words connected with it in the statute. The charge in the indictment must be, that the money, goods, or effects, Charge in the were knowingly and designedly obtained by the pretences. indictment. Without these allegations the indictment would be bad ; and if a defendant on his trial can show that what is im- puted to him as a false pretence, was a misrepresentation made through mistake or misinformation, he would un- doubtedly be exhonerated.

4thly. A fourth general rule is, that the false pretence must be one to which a jury may believe the person de- frauded reasonably might, and actually did give credit.— The false re- presentation It has been contended by the defendant's counsel, in the must be such argument of this case, that it is too broad a description as to deceive a man of ordi- or definition of false pretences, which are punishable nary caution. under the statute. He contended that a pretence, to be indictable, must be such an artful misrepresentation as common prudence or vigilance would not be sufficient to The rule was guard against. That a mere naked lie, though told laid down in Kingv.Wheat with a premeditated design fraudulently to obtain the ley,Burr.1125 which was an effects of another, and though its object be accomplished, indictment at is not a false pretence within the meaning of the statute ; common law. After argu- that if one be so week and negligent, as to suffer him- ment, it was self to be imposed upon by a misrepresentation, the decided that where com- falsehood of which common sagacity or common pre- mon prudence caution might detect, the law will not punish one who and caution would protect a person from suffering by such impositions, the offence was not indictable, but the party was left to his ci- vil remedy. See Leach, 746.

NEW-YORK, is guilty of such an imposition. In support of his doctrine the defendant's counsel has referred to many authorities, and no doubt they establish that these principles governed the decisions of the English courts, previously to the statute of the 30th Geo. 2., against obtaining goods, &c., by false tokens and counterfeit letters. But the decisions of the English, and of our own courts, under the statute relative to false pretences, do not require that the pretences should be of that artful and deceptive character.

Opinion of the judges. It has been said the law never intended to punish one man for making a fool of another. This saying might have been warranted previously to the statute against false pretences. But it seems that statute was intended to protect the weak and credulous against imposition and fraud. In the case of the King v. Young and others, 2 Leach, 572. Ashhurst, J. speaking of this statute says, " the legislature saw that all men were not equally prudent, and passed this statute to protect the weaker part of mankind." In the same case Buller, J. says, " the legislature thought the former statute was too limited, and, therefore, the 30th Geo. 2. was passed. The statute therefore, clearly extends to cases which were not the subject of the indictment at common law. Grose, J. in giving his opinion in the case, uses the following expressions : " The statute created a new offence, for it declares that all persons obtaining money by false pretences, with intent to cheat, shall be offenders against the law and the public peace. That particular offence is made an offence against the law whether it was so or not before."

These principles have been adopted in their fullest ex-
tent by our own supreme court, in the case of the People
v. Johnson, 12 Johns. Rep. 292. Chief Justice Thomp-
son, in delivering the opinion of the court, says, " the sta-
tute of Henry 8th extended the common law rule, but it
still required some false token to be used. But this being
found too limited to prevent the evil intended, the statute
Geo. 2. was passed, which adopted the more general term,
false pretences."

It seems very clear then, that the statute under con-
sideration must be taken to have created a new offence,
and that we are not to look to authorities founded on the
pre-existing law to limit the operation of the legislative
act.

The English judges were certainly of opinion, that a
court could not limit the application of the terms false
pretences used in the statute to any description of false
pretence. That a court could not say, that a person may
fraudulently obtain the goods of another by false pretence
with impunity, because the pretence was not cunning, art-
ful or calculated to deceive, where there was ordinary un-
derstanding prudence or vigilance. Ashhurst, Justice, in
Young's case, before cited, says, "The words of the sta-
tute are very general, and we have no power to restrain
their operation." " The ingredients of this offence," says
Justice Buller, in the same case, " are the obtaining money
by false pretences, and with an intent to defraud. If the
intent be made out, and false pretence used in order to
effect it, it brings the case within the statute."

NEW-YORK,   The explanations of the meaning of the terms false pretences, have also been sanctioned and adopted in our courts. In the case before cited, of the People v. Johnson, Chief Justice Thompson, says, " The statute Geo. 2 has been considered in England as extending to every case where a party has obtained money or goods by falsely representing himself to be in a situation in which he was not, or by falsely representing any occurrence that had not happened, to which persons of ordinary caution might give credit. The ingredients of the offence are, obtaining the goods by false pretences, and with an intent to defraud. In this case there was a false pretence, and one too very naturally qualified to deceive and impose upon the seller, and that pretence was false.

Every naked and improbable lie not sufficient—jury are to decide whether the act amounts to a false pretence or not.   We agree in opinion with the English courts, that we have no power to restrain the operation of the words of the statute. And it does not follow that every mere naked and improbable lie, or that every false assertion, however absurd or irrational, or however it may be contradicted by contemperaneous circumstances or appearances, will be sufficient to support an indictment under the statute. If a person in the attire of a mendicant, were to present himself as a merchant of large fortune —if one were to represent that he was established as a great trader in the adjoining house—or if he were to say, that his friend who was standing at his elbow, would endorse a note for goods to be purchased, and by these or such like false pretences obtain goods, the pretences might be insufficient to support an indictment ;

not because they were not false pretences within the NEW-YORK,
meaning of the statute, but because no jury could be in-
duced to believe that such palpable falsehoods could be
the grounds of credit, or that any man could be defraud-
ed of his property by such improbable means. But it must
be for the jury to determine this; and if they do find that
the pretence was knowingly and designedly used, with an
intent to cheat and defraud, and that property was obtain-
ed by the pretence, they find all that is necessary to sup-
port the indictment.

It is in this sense we understand the qualification in the
case before cited, by which the chief justice appears to Must be such
limit the application of the words false pretences. "They to which ordi-
must be such," says he, "to which persons of ordinary nary caution
caution might give credit." might give
credit.

We understand this to be the law, when a deception is
attempted on a person who may be supposed to be posses-
sed of ordinary caution. But what would or would not be
ordinary caution is a question for a jury, which may de-
pend upon a thousand circumstances to be considered on
a trial. It is a matter which a court never can decide on
in the face of an indictment.

We think a court ought to be disposed to restrain the The opera-
operation of this statute. If a man by a wilful false- tion of the
statute should
hood obtains the property of another, does he not deserve not be re-
punishment as much as one who would feloniously strained.
take it? why should he be permitted to answer to a crim-
inal charge? True, I have, by wilful lies, obtained your
property, but I am not to answer for it, because my repre-
sentations were mere lies. We think with Lord Kenyon,

NEW-YORK, (2 Leach, 571.) "that when the criminal law happens to be auxiliary to the law of morality we should not be anxious to explain it away." And we agree with another eminent English judge, that " it is safer to adopt what the laws have actually said, than to suppose what they meant to say."

Charge in the indictment. The indictment in the cases we are now deciding, charges that the defendant unlawfully, knowingly, and designedly, did falsely pretend to the prosecutor, that he was " a person of wealth and credit." If the jury find this allegation supported by the evidence, then they must find that the defendant did use a false pretence; but they must further inquire, and they, and not the court must determine, whether it can be supposed or believed, that by means of this pretence, the defendant obtained the effects of the prosecutor. And if they find that to be the fact, they must, if there were no other objections to the indictment, pronounce the defendant guilty.

There is not to be found any report of a conviction for a pretence precisely similar; but there is the precedent of an indictment for a false representation, so substantially like this, that the one cannot be distinguished from the other in principle. In the Crown Circuit Companion p. 303, 304. Eng. ed. is the form of an indictment, for obtaining goods by false pretences. The first count states the false pretences to have been, that the defendant was a merchant of great fortune, who wanted to purchase horses, to send them abroad, and was then a housekeeper at Penje Common. In the second count the pretences are stated to have been the same with the mission of what relates to the horses. But the third count al-

leges, that the false pretence was nothing more than that the defendant was then a merchant. This precedent has been adopted by Wentworth, Chitty, Starkie, and other respectable writers, on the practice of criminal law. 6 Went. S. P. tit. Frauds, Eng. ed. 2 Starkie, 473. 3 Chitty, 1006. Eng. ed.

Precedents, it is true, are not always the most conclusive authority; but still, ancient and long-established forms have always been received as expounding the law, and as manifesting the sense in which a statute has been accepted. Indeed, the English judges have gone so far as to say, " It is better that faulty precedents should not be shaken than that the law should be uncertain. 2 T. Rep. 24.

If, then, these precedents may be received as establishing that a false pretence, that a man was a merchant and might support an indictment under the statute, we may conclude that the false pretence set forth in the indictment under consideration, that the defendant was a person of wealth and credit, may warrant a conviction and judgment.

A fifth general rule is, that it must be alleged in the indictment, and it must appear on the trial, that credit was given to the false pretence, and that by it the person defrauded was induced to part with his property. If credit was given independently of the false pretence, or if the property was obtained by any other inducement then the indictment cannot be supported. 2 East's C. L. p. 831. 1 City Hall Rec. p. 140. Lucre & Markford's case.

In order to support the in dictment ere- dit must have been given to the false pre- tence.

The indictment on which we are now adjudicating states, that the prosecutor trusting to the *promises* and *assurances* of the defendant, and being deceived by his false pretences, delivered the goods to him. It appears, then, the prosecutor was deceived by the false pretences; this he may have been, and yet the false pretences may not have been the inducement for parting with the goods. And it is alleged that the goods were not obtained by these fale pretences, *but by the prosecutor trusting to the promises and assurances of the defendant.* It is true, that in the concluding general clause it is aver red, that the defendant, by means of the false pretences " aforesaid," obtained the goods. But this is inconsistent with the previous allegation, that the prosecutor delivered the goods upon his faith in the promises and assurances of the defendant. We are of opinion that this does not charge the defendant with any offence either at common law or under the statute. In our opinion, the indictment is insufficient.

1st. Because the property charged to have been obtained is insufficiently described.

2dly. Because, in respect to all the pretences, except that which relates to the defendant's wealth and credit, the falsehoods of the pretences are not sufficiently aver red.

3dly. Because the indictment avers that the defendant purchased the goods, which is inconsistent with his *having obtained them by false pretences.*

4thly. Because though it be alleged that the prosecutor

was deceived by the false pretences, yet it is averred that NEW-YORK, he was induced to part with his property upon his faith in the promises and assurances of the defendant.

We therefore give judgment in faver of the defendant, on the demurrer.