MONTGOMERY OYER AND TERMINER, February, 1850.

*Before Paige, J., Belding, County Judge, and two Justices of Sessions.*

### THE PEOPLE *vs.* VAN HORNE.

The practice of finding two or more indictments for different degrees of the same offence, or for different offences, founded on the same matter, disapproved, as a general rule.

The power of the supreme court, or of a justice thereof, to bail in all cases, whether upon an accusation of treason, murder, arson, or any other offence, is indisputable.

The same power is also possessed by courts of oyer and terminer.

The power to bail is incident to the power to hear and determine the offence charged.

In cases of felony, the prisoner can not, as a matter of right, be admitted to bail. Whether he shall be let to bail is a question resting in the sound legal discretion of the court.

Although the general rule in cases of felony is, that an indictment is to be deemed conclusive as to the guilt of the accused, and that he is not to be admitted to bail, there are several circumstances, arising after indictment, which entitle the party to bail, and which may be regarded as exceptions to the general rule.

Thus, where two grand juries out of three had adjudged, upon the evidence given on behalf of the people, that the crime committed by the prisoner was only manslaughter, and the third that it was murder, the court held that on a motion to admit the prisoner to bail, he was entitled to the benefit of the presumption of law that his offence did not exceed the grade of manslaughter. And the public prosecutor, and his associate counsel, expressly consenting that the prisoner should be bailed if the court possessed the power to bail him, he was admitted to bail, accordingly. *See also note (a).*

MOTION on the part of the prisoner to admit him to bail; he being in custody on an indictment for murder.

*By the Court,* PAIGE, J. An application was made yesterday by the counsel of Van Horne to admit him to bail. To this application the district attorney, with the concurrence and under the advice of the counsel assigned to aid him in the prosecution, assented. Notwithstanding the consent of the public prosecutor, that this motion be granted, the court, influenced by the peculiar circumstances of the case, and the novel character of an

The People *v.* Van Horne.

application to admit a prisoner to bail under arrest founded on an indictment for a capital crime, reserved the motion for further consideration and examination, before disposing of it. We have, since the adjournment of the court, looked into the case, and we find that the prisoner Van Horne was, on the 16th of July last, arrested on a warrant issued by Justice Horton, on a charge of having committed the offence for which he was subsequently indicted, and that after an examination of the witnesses produced in support of the prosecution, and one witness called by the accused, he was committed by such justice to jail, and remained in prison until the 7th day of September, when he was indicted by a grand jury of the county, after a full examination of the facts of the case, for manslaughter in the third degree; that on this indictment he was arraigned before the court of sessions, when on his application he was admitted to bail by that court; the public prosecutor making no objection thereto; that at the oyer and terminer, held in December last, a second complaint, charging the commission of the same offence, was presented to the grand jury against him; and that, that grand jury, after examining the witnesses in support of the accusation, found a bill against him for manslaughter in the second degree. On the second indictment Van Horne was re-arrested, and on his application to be let to bail, the public prosecutor not objecting, the court of oyer and terminer admitted him to bail. At the present oyer and terminer, a third complaint, founded on the same charge, has been made to the grand jury in attendance at this court, against Van Horne, and this grand jury have presented a bill against him for murder. Here are therefore three different grand juries who have successively passed upon the same accusation against Van Horne, and who, after an investigation of the facts bearing upon the case, have reached different conclusions as to the grade of the crime to which his offence belongs. Two pronounce it manslaughter in different degrees, and one murder. We have looked into the minutes of the evidence taken by the two last grand juries, upon which the two last indictments against Van Horne were founded, and we find that the evidence given before such juries was substantially

identical.   These grand juries, upon the same evidence, arrived at different conclusions as to the degree of the guilt of the prisoner.   In passing we can not forbear the remark that the practice of renewing a complaint before a subsequent grand jury, after a previous grand jury have fully examined into the facts of the case, and have presented an indictment founded thereon, is not to be commended.   The accuser and accused ought, as a general rule, to abide by the decision of the first grand jury, who act upon the complaint and find a bill against the accused.   To countenance these successive complaints founded on the same charge, where the accuser, or the friends of the accused, believe that the first grand jury have mistaken the degree of the offence, of which the accused is guilty, would lead to a disgraceful scramble between the enemies and friends of the accused, the former struggling to procure an indictment for the highest and the latter for the lowest degree of the offence charged, which would be fatal to a firm, steady, and impartial administration of criminal justice.   And we regard it as the duty of the court to discountenance the practice of finding two or more indictments for different degrees of the same offence, or for different offences founded on the same matter.   (1 *Chit. Cr. Law*, 316.)

In this case, what is there to prevent any person who believes that Van Horne's offence can not be raised above manslaughter, either in the third or fourth degree, from renewing the complaint against him before the next grand jury; and if that grand jury should agree with the complainant in opinion, they would probably find a bill against him for manslaughter in one of these degrees.   And in like manner the same experiment may be repeated with every subsequent grand jury, which may be summoned to sit in the county, until the case is finally disposed of by a trial and conviction, or acquittal.   This suggestion shows to what results this practice of renewing, from term to term, complaints for the same offence will lead; results unfavorable to the character of our courts, and to the administration of justice, and often tending to the oppression of the accused.   Wherever two indictments for the same offence, or for the same matter, although charged as different offences, are pending, the indict-

ment first found will be deemed to be superseded by the second indictment, and will be quashed. (2 *R. S.* 812, § 42, 3*d ed.*) There are undoubtedly cases where a second indictment would be proper—and there are cases, also, where it would be necessary; as where additional evidence of an important character is subsequently discovered, which fixes upon the accused a higher degree of guilt, than that imputed in the first indictment; and where the first indictment is defective and a new indictment becomes necessary, before the accused can, with a proper regard to the claims of public justice, be put upon his trial.

By these remarks we disclaim all intention of imputing any blame to the district attorney.   We understand that the second complaint was made against his advice, and that the third indictment became necessary in consequence of a defect in the second indictment.   It is said in justification of the second complaint, that some evidence was discovered which was not presented to the first grand jury.   But we do not think that this additional evidence, (to which our attention has been called,) materially alters the case as presented on the part of the people to the first grand jury.   The threats which it is supposed this additional evidence establishes, are too equivocal to be understood, in a case of life and death, as necessarily menacing the life of the deceased.   Upon a review of all the facts and circumstances of the case, in connection with the very important fact that two grand juries out of three have adjudged upon the evidence given on behalf of the people, that the crime committed by the prisoner is manslaughter, and not murder, we think that on this motion the prisoner is entitled to the presumption of law, that his offence does not exceed the grade of manslaughter. We have also a right to infer from the assent of the public prosecutor to the bailing of Van Horne, that his opinion, founded upon the evidence within his knowledge, coincides with the opinion of the two grand juries, who pronounced the prisoner's offence manslaughter, and that he has no expectation of convicting him of any higher crime.   We have not only examined the evidence given before the two last grand juries, but also the evidence taken by the committing magistrate, which we are

informed is the same as that given before the first grand jury.
And on this examination we see no reason to question the just-
ness of the opinion of the public prosecutor, or to reject the char-
itable view to be taken of such evidence, which will exclude
the imputation against Van Horne of a premeditated design to
take the life of the deceased.    The testimony of Hammond, who
was examined before the first grand jury, but not before either
of the two last grand juries, carries with it a strong negation of
any such premeditated design, and it shows that the stick with
which the fatal blow was inflicted, was not taken by Van Horne
into his hands in reference to any anticipated conflict with the
deceased.    Regarding then the true denomination of the crime
of Van Horne to be manslaughter; two questions arise on the
application to admit him to bail.  1st. Whether this court has
the power to bail him while in custody on an indictment for
murder; and 2dly. If we have the power, is it discreet and
proper to exercise it, even with the consent of the public prose-
cutor.    We entertain no doubts in relation to our power to bail
in this case.

   The power of the supreme court, or of a justice thereof, to
bail in all cases, whether it be treason, murder, arson, or any
other offence, is indisputable. (4 *Black. Com.* 299.   *Ex parte
Tayloe,* 5 *Cowen,* 39.   1 *Chit. Cr. Law,* 98, 129.  1 *Wheel.
Cr. Cas.* 444.   *People* v. *Goodwin,* 1 *Id.* 430.  1 *Hawk. B.
2, ch.* 15, § 80 *and note.*)   The same power is possessed by this
court.   The power to bail is incident to the power to hear and
determine.   (1 *Wheel. Cr. Cas.* 436.)

   The revised statutes also expressly confer the power.   They
provide, (2 *R. S.* 814, § 56,) that in cases where, by law, per-
sons indicted may be let to bail, for their appearance at the
court having cognizance of the offence, they may be so let to
bail by the court having jurisdiction to try the offence charged.

   This power to bail may be exercised either before or after
indictment.   Whether the prisoner is to be bailed or not rests
in the discretion of the court.   But this discretion is a judicial
discretion, and the court should be guided in its exercise by the
circumstances of the case, and the rules of law applicable to

such circumstances. Our power to bail being undeniable, will it be a discreet and proper exercise of this power, to admit the accused to bail under the circumstances of this case, with the consent of the public prosecutor ?

In cases of felony, the prisoner can not, as a matter of right, be admitted to bail. Whether he shall be let to bail is a question resting in the sound legal discretion of the court.

Hawkins (*B.* 2, *ch.* 18, § 40,) lays down the rule, that in a case of felony, bail is only proper where " it stands indifferent whether the party be guilty or innocent," and that it is not to be allowed where the accused is notoriously guilty. This rule was adopted by the supreme court, in the case of *Ex parte Tayloe,* (5 *Cow.* 39.) In that case Tayloe had been found guilty of manslaughter by a coroner's inquest, and as the ex parte depositions taken by the coroner showed a clear case of manslaughter, if not of technical murder, bail was refused. But many cases may be found in the English books, where persons clearly appearing to be guilty of manslaughter, on depositions taken by the coroner, have been admitted to bail. (*Chit. Cr. L.* 129. 1 *Hill* 392, 3. 2 *Str.* 911, 1242. 1 *Sal.* 104. *Bac. Ab. Bail in Crim. Case.* (*D*) *mar. note. King* v. *Jones,* 1 *Bar. & Ald.* 209. *People* v. *Goodwin,* 1 *Wheel. Cr. Cas.* 456, *per Spencer Ch. J. Lisle's case, Kelynge. Peters. on Bail,* 521. *Com. Dig. Bail, F.* 3.) But it is said that in cases of felony, after indictment, the accused can not be bailed, because the evidence taken by the grand jury is secret, and the indictment must therefore be regarded as conclusive of his guilt.

Chitty says (1 *Chit. Cr. L.* 129) " a man charged with murder by the verdict of a coroner's inquest may be admitted to bail, if it appear by the depositions to amount only to manslaughter ; though not after the finding of an indictment by the grand jury, the reason for which distinction may be, that in the first place eht court have the depositions ot examine, whereas in the latter case the evidence is secret, and does not admit of a summary revision." The same distinction is taken in Lord Mohun's case. (1 *Salk.* 104.) In that case the court say : " If a man be found guilty of murder by a coroner's inquest, we some-

times bail him, because the coroner proceeds upon depositions taken in writing which we may look into. Otherwise if a man be found guilty of murder by a grand jury; because the court can not take notice of this evidence, also which they by their oath are bound to conceal." The same distinction was taken by Lord Raymond in *Rex* v. *Dalton*, (2 *Strange*, 911.) I apprehend that this distinction, although it is recognized by Justice Sutherland in *Ex parte Tayloe*, (5 *Cow.* 56,) and by Justice Cowen in *People* v. *McLeod*, (1 *Hill*, 393,) should no longer prevail with us, as the reason upon which it was founded has ceased to exist. The evidence taken by the grand jury is not now secret, and they are not by their oath required to conceal it. (2 *R. S.* 811, §§ 30, 31, 3*d ed.*) Grand juries now under the provisions of the revised statutes (2 *R. S.* 811, § 30) appoint a clerk to take minutes of the evidence given before them, and these minutes are delivered to the district attorney. On an application to admit a prisoner to bail in a case of felony, after indictment, I see no more objection to the court's looking into the minutes of the evidence kept and preserved by the grand jury, and delivered by the district attorney, than there is, in their looking into the depositions taken by a coroner, or a committing magistrate, on a like application, made before indictment. We therefore think that under the revised statutes, an indictment should not, on an application to admit to bail, be regarded as any more conclusive, as to the guilt of the prisoner, than the coroner's inquest, or the adjudication of a committing magistrate. And I find that in Virginia, it has been expressly decided, by the general court, that on an application to bail in a case of felony, the indictment is not to be regarded as conclusive of the guilt of the prisoner. (*Gomin* v. *Rutherford*, 5 *Rand.* 646.) The same decision was made by the constitutional court of South Carolina, in *State* v. *Hill*, (1 *Rep. of Const. Court of S. C.* 242.) In that case it was held that after indictment in a capital case, affidavits may be received to contradict the finding of the grand jury. And in the case of *People* v. *Goodwin*, (1 *Wheel. Cr. Cas.* 443,) Ch. J. Spencer disregarded the distinction taken in the English cases in applications to the court, made before and after

indictment. In that case Goodwin had been found guilty of murder by the coroner's inquest, and was subsequently indicted for manslaughter and tried, and the jury disagreeing they were discharged. Chief Jus. Spencer admitted Goodwin to bail upon the ground, that he was bound to conclude from the disagreement of the jury, that it was doubtful whether the prisoner was guilty. As a general rule, on an application to admit to bail the court will not look into any extrinsic evidence, but will confine their examination to the ex parte testimony produced in support of the accusation before the coroner, the committing magistrate, or the grand jury. For, to receive extrinsic evidence would be an assumption of the province of the petit jury, as it would be a trial of the question of fact, as to the guilt or innocence of the prisoner. (1 *Chit. Cr. L.* 130.)

The object of an arrest and imprisonment before trial and conviction is not the punishment of the delinquent, but to secure his forthcoming to abide his trial, and the probability of flight to evade the punishment, must be taken into consideration on an application to admit to bail. (*People* v. *Goodwin,* 1 *Wheel. Cr. Cas.* 447. *Ex parte Tayloe,* 5 *Cow.* 54, 5, *per Sutherland, J.*) In *Rex* v. *Baltimore,* (4 *Bur.* 2179,) the court of king's bench let Lord Baltimore to bail, on a charge of rape, for the reason, as assigned by Lord Mansfield, that his voluntary surrender was a strong indication that he had no intention of absconding from justice; the probability of which was heightened by his large property, of which he would incur a forfeiture if he ran away.

The power to bail in cases of felony, not capital, has in this state been repeatedly exercised, after indictment, by the court of oyer and terminer and general sessions, where there was no probability of flight from justice, without reference to the probable guilt of the accused. Where the punishment is death, or a degrading imprisonment, the presumption is strong that the accused will attempt to elude the demands of justice; and in admitting to bail, regard should therefor be had, as well to the nature of the punishment, as to the probable guilt of the party. And the safest course, where the guilt of the prisoner

is clear, is to deny bail. But where there is so great an approximation to certainty, as to leave no doubt in the minds of the court, that the accused will not attempt to abscond from justice, I will not say that there may not be cases, where it would be a proper exercise of judicial discretion to admit to bail, if the party can give it in the amount and with the sureties required, even if the question of guilt did not stand indifferent on the ex parte evidence produced on the part of the people. For, allowing bail under such circumstances, would be in consonance with the principle, that the object of such imprisonment before trial, is not the punishment of the accused, but to secure his forthcoming to stand his trial, and to abide the punishment to be inflicted, in case he shall be convicted.

But conceding that the general rule in cases of felony is, that an indictment is to be deemed conclusive as to the guilt of the accused, and that he is not to be admitted to bail; there will be found on examination, to be several circumstances although arising after indictment, which confessedly entitle the party to bail, and which may be regarded as exceptions to the general rule. Most of the exceptions will be found mentioned at page 671 of 3 *Hill's Reports*, in an able and elaborate note of the reporter. The exception applicable to the present case, is where the attorney general, or district attorney consents, that the prisoner be admitted to bail. The case of Selfridge was one of this character. He was after indictment for manslaughter bailed by the supreme court of Massachusetts, the attorney general not objecting thereto. In *Ex parte Tayloe*, (5 *Cow*. 60,) Justice Woodworth concedes, that if the attorney general, or district attorney consents that a prisoner be let to bail, the court have a right to infer, that it is a proper case for allowing bail. In the present case the public prosecutor and his associate counsel have given an express consent that Van Horne be admitted to bail, if the court possess the power to bail him. The court having the power, we regard the consent as unqualified, and as a concession on the part of the people that under all the circumstances of the case, it is a proper case for the exercise of the power of the court to bail. It is upon this consent of the counsel for

the people to the motion on behalf of the prisoner to be let to bail, that we mainly place our decision in favor of the application. Without this consent we should not have felt ourselves justified in bailing the prisoner. The counsel for the people seem to entertain no apprehension, of any intention on the part of Van Horne to flee from justice. He has at no time made any attempt to elude an arrest. He has, we are informed, at all times manifested a willingness to encounter the ordeal of a public trial. If there is no ground for apprehending the escape of Van Horne, the case comes within that of Lord Baltimore, who was let to bail by the court of king's bench, on a charge of rape, then a capital crime, on the sole ground that he had indicated no intention of absconding from justice. This consideration fortifies the application to admit Van Horne to bail, and furnishes an additional reason in justification of the consent to the application, given by the counsel of the people. If it could be ascertained to a moral certainty that the accused would appear and stand his trial, there would be no valid objection to admitting him to bail. For as I have already stated, the object of imprisonment before trial is not the punishment of the delinquent, but merely to secure his appearance in court when his trial is to be had. Chief Justice Spencer (*People* v. *Goodwin*) says, " Until his guilt is legally ascertained, there is no ground for punishment, and it would be cruel and unjust to inflict it." (1 *Wheel. Cr. Cas.* 447. *Ex parte Tayloe,* 5 *Cow.* 54, 5, *per Sutherland, J.*)

We are given to understand that the counsel for the people are not ready to proceed with the trial at this court, and we are. also informed that the accused is ready for trial, and will insist that the trial take place at this court unless he is admitted to bail. The next court will not be held until the 2d Monday in June next. The confinement of the accused in jail until the next court, in consequence of the want of preparation on the part of the people to go on with his trial now, would be a hardship which ought not to be imposed upon him, if it can, with a due regard to the claims of public justice, be avoided; especially as the accused offers to give security for his appearance at

The People *v.* Van Horne.

the next court by sureties of unquestioned ability, and in any amount the court may require. Delay on the part of the public prosecutor in trying an indictment, unless excused, entitles the accused to bail. (2 *R. S.* 821, §§ 29, 30, 3*d ed.*) In *Fitzpatrick's case*, (*Salkeld*, 103,) the prisoner in a case of high treason was bailed because a session had passed without a prosecution of the charge.

After a careful and anxious consideration of all the facts and circumstances of this case we have come to the conclusion, although with some hesitancy, to admit Van Horne to bail. We place our decision mainly upon the consent given by the counsel of the people ; although we have been influenced to some extent by the other considerations above mentioned. The opinion which we give on this motion ought not to have any influence on the final determination as to the guilt or innocence of the accused. We have only looked at the facts of the case as they appear in the criminating evidence produced on the part of the people, in connection with the finding of the grand juries founded on ·this evidence. Van Horne is entitled to a fair and impartial trial. And while he ought to be protected from all vindictive efforts to procure his conviction, he ought not to be relieved from responsibility for the deed he has committed, through the influence of friends. We direct that Van Horne be let to bail, on his entering into a recognizance with sureties of sufficient ability in the penalty of $5000.(*a*)

NOTE. The prisoner appeared and was brought to trial at the Montgomery oyer and terminer in June, 1850, before Justice CADY, and was found guilty of manslaughter in the third degree, and sentenced to imprisonment in the state prison for four years.

(*a*) The Reporter has been kindly furnished by Judge WILLARD with the following note of a case decided by him, in which the same question arose.

THE PEOPLE *v.* PORTER. In Washington oyer and terminer, November, 1839, before WILLARD, circuit judge.

Indictment for murder. The prisoner voluntarily appeared, on the coming in of the indictment, and by his counsel offered to give bail for his appearance at the next oyer and terminer to be held in said county in June thereafter. The

Squire *v.* Flynn.

.grounds, as disclosed in several affidavits were, a defence on the merits; the absence of material evidence; the feeble state of the prisoner's health, which would not endure a protracted imprisonment; and he proposed also, to disclose the nature of his defence. The district attorney consented that the court might admit him to bail, if they had the power to bail after indictment, for murder. He consented also, that the court might look into the evidence taken before the grand jury, and the affidavits furnished by the prisoner, disclosing his defence. The court, after examining the several documents submitted to them, decided that they had the power to admit to bail, and accordingly let the prisoner to bail in the sum of five thousand dollars to appear at the next oyer and terminer. The prisoner appeared at that court, was tried and acquitted.