The People *v.* Dixon.

SUPREME COURT. At Chambers. Brooklyn, November, 1856. Before *Birdseye,* Justice.

## THE PEOPLE *v.* JOHN DIXON *et al.*

In cases of felony the prisoner cannot demand, as matter of right, to be let to bail, and he should not be bailed unless the court can, upon all the facts, see that letting to bail will, in all reasonable probability, secure his forthcoming to abide the event of his trial.

When there is so strong a probability of conviction as to warrant the belief that the person accused would, by flight, and at the expense of any mere pecuniary forfeiture, seek to evade trial and punishment, he should not be bailed.

On an application to bail, after indictment, depositions taken before the committing magistrate cannot be looked into.

After indictment found, a defendant is presumed to be guilty for most purposes, except that of a fair and impartial trial before a petit jury.

THIS was an application to let the defendant to bail. Six indictments had been found against the defendants, John Dixon and Joseph Jackson, among which were indictments for rape and abduction, and for assault with intent to commit a rape.

*A. Hadden,* for the prisoners.

*R. E. Underhill* (District Attorney), for the People.

BIRDSEYE, J. The power to let these defendants to bail after indictment, is conferred by statute. (2 *R. S.*, 728, § 57.) It is admitted that the exercise of that power rests in the discretion of the court or judge. That discretion is, however, a judicial one. It is to be governed by fixed rules and principles, so far as they are applicable to the circumstances of the particular case presented. In cases of felony, the prisoner cannot demand as a matter of right to be released from imprisonment and let to bail. He should not be so released, unless the court can, upon all the facts, see that letting to bail will, in all reasonable probability, secure the end intended by his confinement. The object of arrest and imprisonment, prior to conviction, is not to punish the delinquents, but to ensure his forthcoming to abide his trial and the punishment which may be inflicted on him by the sentence of the law upon conviction. (*Goodwin's case*, 1 *Wheeler's Crim. Cas.*, 446; *Ex parte Tayloe*, 5 *Cow.*, 54; *The People* v. *Van Horne*, 8 *Barb.*, 165.) The question which arises in this case, and the rules which should govern its decision, are stated with much clearness and force by Sutherland, J., in *Ex parte Tayloe* (5 *Cow.*, 55). He says: "The principal consideration is, whether the nature of the crime be such as that a recognizance would operate to secure the prisoner's appearance. If so, it is proper to receive bail as a substitute for imprisonment. Where the punishment is directly or in effect pecuniary merely, as by fine or temporary imprisonment for a misdemeanor, it is accordingly a matter of course to receive competent bail, proportioned to the probable amount of the ultimate penalty. There is little or no difficulty in saying what the amount should be, and it may, at any rate, be made perfectly adequate to the object. But when the punishment is either capital, or imprisonment may follow for a considerable length of time in the State Prison, at hard labor, or other degrading circumstances, for a crime involving moral turpitude, these are far different considerations; and the law proceeds upon this difference in allowing or denying bail. If capital, bail should not, in general, be allowed, because no pecuniary consideration can weigh against life; and where guilt

The People *v.* Dixon.

is clear, and a rigorous and disgraceful imprisonment may follow for a great length of time, the presumption is strong that the accused will not appear and surrender himself to the demands of justice, to avoid a mere forfeiture of property. The safest course, therefore, in cases of felony, where the guilt of the criminal is clear, is to deny bail."

The rule which should control in a case of this kind, is well expressed in *Hawkins* (*Pleas of the Crown*, B. 2, *ch.* 15, § 40), as follows: "Bail is only proper where it stands indifferent, whether the party be guilty or innocent of the accusation against him, as it often does before his trial; but where that indifferency is removed, it would, generally speaking, be absurd to bail him." The same rule in substance is repeated in section 80 of the same chapter.

This rule is adopted by Chitty (1 *Cr. Law*, 99, 3d *Am. ed.*). It was acted upon by the Court of King's Bench, in *The King* v. *Marks* (3 *East.*, 163), by Chief Justice Spencer in Goodwin's case (1 *Wheeler's Cr. Cases*, 443), and was expressly approved by each of the three judges of the court, in 5 *Cow.*, 38, as also in *The People* v. *Van Horne* (8 *Barb.*, 163). Nor have I found any adjudged case, or any text book of respectability, which questions it.

Testing the application, then, by these principles, does it stand indifferent whether these parties are guilty or innocent of the accusations against them; or, in other words, is there such a probability of their guilt as to warrant the belief that they would by flight, and at the expense of any mere pecuniary forfeiture, seek to evade trial and punishment.

Examining this question now, simply upon the indictments, and the consequences attached by law to conviction thereon, I am constrained to hold that the accused now rest under a violent presumption of guilt, such as would naturally induce them to seek, by any sacrifice of property, an escape from the rigorous and disgraceful imprisonment to which they may be subjected. That imprisonment, it will be recollected, may, in case of conviction for the principal offence charged, be for the life of the accused: all whose property would then pass from

them on such civil as upon a natural death. And should that imprisonment not be for life, or should the conviction be for the lesser offences, I am unable to say what pecuniary loss would, in the mind of the accused, be a greater evil than the punishment to which they would be subjected.

It was well urged that the spirit of our law has tended, and is tending, to a mitigation of the severity of our criminal code. But it is the duty, as well of those who make as of those who administer that law, to see to it, that, though the amount of the penalty imposed may in proper cases be diminished, yet that the certainty of its infliction shall not be impaired. Unless this be carefully guarded, the humane tendency of our law will assuredly be checked. It has been well said, that the inquiry here " comprehends not only the individual case, but the interests which a large community have in the faithful execution of the criminal laws." Vigilance and certainty in this respect can alone insure public safety and tranquillity. Laxity, while it brings the administration of justice into contempt, is sure to result in the greatest of social evils—the indiscriminate punishment of guilt and innocence at the hands of an infuriated multitude."

It was, however, urged upon the argument, that I should look beyond the indictment, and should examine the depositions before the committing magistrate, and that there were some discrepancies and contradictions in them which diminished the probability of guilt.

The prisoners are held now under the indictments; not on the warrants founded upon those depositions. The proof before the grand jury may well have been very different from that before the committing magistrate. All the authorities agree that, when the indictment has been found, the inquest of the coroner and the depositions before the magistrate can no longer be looked into. (5 *Cow.*, 56; 1 *Hill*, 392; 8 *Barb.*, 163.)

It is true that, in the case of *The People* v. *Van Horne* (8 *Barb.*, 163), the court intimate that since the provision in the Revised Statutes (2 *R. S.*, 728, § 30), giving to the grand jury power

The People *v.* Dixon.

to appoint a clerk, and to preserve minutes of the evidence before them, and to direct that such minutes be delivered to the District Attorney, the effect of an indictment upon an application like the present, is not as conclusive as before, and that the court may look into the minutes of the evidence before the grand jury.

This provision was a new one, introduced into the statute by the revisers. Their note to it, as reported, shows that it was intended principally for the convenience of the District Attorney, and that it was left discretionary with the jury whether they would keep such minutes, or if they did, whether they would direct them to be delivered to the District Attorney. How far the intimation in 8 *Barbour*, 164, should be affected by the permissive, rather than the directory nature of the statute (a distinction not adverted to there), or by the difficulty of obtaining such minutes, if withheld by the District Attorney, need not now be inquired into. It is sufficient here that the minutes of the grand jury are not laid before me, nor was any effort made to compel their production when the District Attorney, upon request, declined to furnish them.

It was also sought upon the argument, by reference to the presumption of innocence till guilt is proved, to lessen the conclusiveness of the indictment upon the question of guilt. That presumption of the common law has no place here. So far as the application is concerned, it has ceased, if not given place to the presumption of guilt. "After bill found, a defendant is presumed to be guilty to most, if not to all purposes, except that of a fair and impartial trial before a petit jury." (*The State* v. *Mills*, 2 *Dev. R.*, 421.)

Application denied.