## SUPREME COURT — TRIAL TERM — ONONDAGA COUNTY.

### October, 1916.

## THE PEOPLE v. CHARLES F. MOTT.

### (97 App. Div. 86.)

BAIL—APPLICATION FOR, PENDING TRIAL FOR INDICTMENTS—POWER TO ADMIT TO BAIL GOVERNED BY SAME RULES AS AT COMMON LAW—CODE CRIM. PRO., § 553.

Section 553 of the Code of Criminal Procedure, which provides that bail shall be allowed as matter of right in misdemeanors and as a matter of discretion in all other cases, being but a statutory declaration of the common-law rule, the exercise of the discretionary power to admit to bail should be governed by the same rules as at common law.

An application for bail pending the trial of ninety-two indictments, each charging defendant with dishonesty in connection with the work of the construction of a certain public hospital, will be denied where it appears that while traveling in a foreign country under an assumed name he was arrested on extradition process, the court not being satisfied that there is no danger of his leaving the country.

APPLICATION by defendant to be admitted to bail.

*Thomas Woods,* for motion.

*A. F. Becker, Deputy Attorney-General,* opposed.

EMERSON, J.:

The defendant, Charles F. Mott, during the years 1914 and 1915, was one of the supervisors of Onondaga county and chairman of the building committee of the Onondaga County Tuberculosis Sanitarium buildings then in process of construction.

Charges of dishonesty having been made in connection with that work, the board of supervisors instituted an investigation, in the process of which Mott was sworn as a witness. Before his examination was concluded he disappeared and a process server armed with a subpœna was unable to find him for such service. The powers of the board as an investigating tribunal ceased on December 31, and on January 3, 1916, Mott returned home and the next day absconded from the country. The proofs submitted on the application show that from February 7 to September 27, 1916, he was traveling under an assumed name through the Central and South American countries, and on the latter date was arrested under extradition process at Asuncion, Paraguay. Having been thus arrested, he took no steps to fight extradition, but returned with the officer in charge to Syracuse, his former home. The grand jury of Onondaga county in the meantime found ninety-two indictments against him in connection with the above hospital construction, and he has pleaded not guilty to each of said indictments. Mott now asks to be admitted to bail pending the trial of said indictments.

The object of arrest and imprisonment before trial and conviction is not the punishment of the delinquent, but to secure his forthcoming to abide the trial, and the requirement of bail is for that purpose, in theory it being a delivery or bailment of the person so accused to his bondsmen upon their giving, with himself, sufficient security for his appearance, he being supposed to continue in their friendly custody instead of going to prison.

At common law all offenses were bailable except murder, but this rule was early adopted by the King's Bench that bail would be refused in case of one notoriously guilty as well as one who from the papers submitted was, in the judgment of the court, probably guilty of the crime alleged. Thus Hawkins, in his Pleas of the Crown, says that bail in cases of felony is only proper where it stands indifferent whether the party is guilty

or innocent, for, as the learned writer says, where the indifference is removed it would be absurd to bail him. (2 Hawkins P. C., chap. 15, §§ 40, 80.)

The right to bail at common law was, however, regulated and extended by acts of parliament until it was finally held that bail was to be allowed as matter of right in practically all cases of misdemeanor and as a matter of discretion in all cases of felonies. (1 Chitty Cr. Law, 93, 95–99.)

This discretionary power to bail was not an arbitrary one, but rather a judicial discretion to be exercised according to the circumstances of the case, and the main inquiry was whether in the judgment of the court the allowance of bail would secure the attendance of the accused at the trial. If so, bail would be allowed, otherwise it would be refused. (*Ex parte* Taylor, 5 Cow. 54, 55; People v. Van Horne, 8 Barb. 165, 166; People v. Dixon, 3 Abb. Pr. 395; People v. Shattuck, 6 Abb. N. C. 33.)

In Rex v. Baltimore (4 Burr. 2179), a charge of rape having been preferred against Lord Baltimore, he voluntarily surrendered himself to answer the charge, and Lord Mansfield said in admitting him to bail that this voluntary surrender was a strong indication that he had no intention of absconding from justice, particularly in view of the fact that he had large property interests which would be forfeited by his running away.

The common-law rule as modified by acts of parliament has been codified in our State by section 553 of the Code of Criminal Procedure, which provides that bail shall be allowed as matter of right in misdemeanors and as a matter of discretion in all other cases.

The Code being, therefore, a statutory declaration of the common-law rule, the exercise of the discretionary power to bail should be governed by the same rules as the common law, and the right to bail should be refused unless it clearly appears to the court that there is no danger of the accused leaving the country and thus failing to appear for trial. I am frank to

say that, from the history of this case, I am not clearly impressed with such a belief. Had the defendant voluntarily returned and surrendered himself up on learning of the indictments filed against him the rule laid down in the case of Lord Baltimore might well apply. Instead, however, he waited until arrested on extradition process and then only submitted to a quiet return to this country. I am persuaded that this was due more to the uselessness of fighting extradition and to the moral effect rather than a willingness to face the charges thus brought against him. It, therefore, follows that the application for bail should be denied.

Application denied.